IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (CAMDEN)

| | | |
|---|---|---|
| EL AEMER EL MUJADDID | : | **<u>CIVIL RIGHTS COMPLAINT</u>** |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No:_____ |
| | : | |
| LYNN A.WEHLING, | : | |
| In her individual and official capacities | : | |
| Defendant | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |

### INTRODUCTION

Plaintiff alleges that state actor Lynn A. Wehling retaliated against him by fabricating and falsifying electronic court disposition records in response to his citizen complaints filed with the Vineland Municipal Court and his civil rights suits against her and other state actors filed in the Superior Court of NJ Law Division (Camden), the U.S. District Court of New Jersey -Camden and having those electronic documents placed in the municipal court records in or about the year 2017 after the municipal matters were dismissed in Plaintiffs favor in 2013. Plaintiff contends that his allegations if proven at trial, would establish an infringement of first amendment right of access to the Courts, first amendment right to be free from retaliatory prosecutions, and the counterparts to those federal rights under the New Jersey State Constitution N.J.S.A. § 52:4B-36 (c) and the NJLAD.

Plaintiff's contention that the defendant Lynn A. Wehling and other State actors acted in retaliation against him for his free speech activities, and in an effort to stifle those activities, demonstrate additional claims for retaliation in violation of the plaintiff's first amendment right,

its counterpart under N.J. Const. Art. I, the NJLAD and N.J.S.A. § 52:4B-36 (c).[1] Plaintiff's contends that the defendant Wehling and other state actors acted in retaliation against him for his exercise of the right to free speech and to petition for redress, and in an effort to stifle those activities, constitutes additional claims for retaliation in violation of the plaintiff's first amendment right, and for malicious abuse of the criminal process. Finally, the plaintiff claims that the defendant Wehling conspired with other state actors against him to frame him in a text book Jim Crow fashion for "Loitering for purposes of CDS" knowing the Plaintiff was removed from a bed in a private residence, and other fabricated charges also suggests a conspiracy to deny him equal protection under the law actionable under Section 1985 (2) (3).

Plaintiff stands in the same position as Viviano[2] to the extent, where plaintiff discovered the "New evidence" (eCDR- 2 NJ/CDR-2 1/1/2017 format) of a cumulative pattern by his own means rather than through a turnover in discovery and the existence of defendant Wehling's conduct in altering arrest warrant applications plaintiff relied upon to prove his civil claims.

---

[1] (c) To be free from intimidation, harassment or abuse by any person including the defendant or any other person acting in support of or on behalf of the defendant, due to the involvement of the victim or witness in the criminal justice process; Rights of Crime Victims and Witnesses (N.J.S.A. § 52:4B-36)

[2] In Viviano we identified the concealment tort as an analogue of the tort of spoliation of evidence. The spoliation tort developed from instances where a person intentionally interfered with a plaintiff's prospective civil claim. See Hazen v. Municipality of Anchorage, supra (where spoliators were defendants in plaintiff's civil action for false arrest and malicious prosecution and they allegedly altered tapes plaintiff relied upon to prove those claims); Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 482 (App. Div. 1995) 18 U.S.C. § 1519 provides, "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." In re Dutt, DRB 21-064, n.2 (N.J. Oct. 28, 2021) Attempts to interfere with the operation of the Judiciary's computerized systems or to alter records in the Judiciary's computerized systems are strictly prohibited and may result in criminal prosecution, civil penalties, and/or disciplinary action where appropriate

Similar to Viviano's opposition, the defendant Wehling and other state actors here interfered with this plaintiff's civil claims as spoliators and defendants in plaintiff's civil actions for abuse of process, malicious prosecution and alternative common law and statutory claims and Plaintiff maintains defendants generated electronic altered and re-wrote arrest warrant applications originally prepared upon NJ/CDR-2 8/1/2005 formatted forms on April 21, 2010, which plaintiff relied upon during his successful probable cause challenge in the Vineland Municipal Court on June 20, 2013 [T2] and still relies upon to prove those claims.[3]

Plaintiff has submitted additional NJ records request to the Vineland Municipal Court for the missing pages 4 of 7, 5 of 7 and 7 of 7 as to CDR 2 No. 0614W20101690 in NJ/CDR2 8/1/2005 format and CDR 2 No. 0614W20101691 in NJ/CDR2 8/1/2005 format. As to CDR 2 No. 0614W20101692 pages 3 of 7, 4 of 7, 5 of 7, 6 of 7 and 7 of 7 in NJ/CDR2 8/1/2005 format. These documents demonstrate the Complainant's address on April 21, 2010, which was **43 Fayette Street, Bridgeton, NJ 08302.**[4] Plaintiffs NJ records request also sought copies of the missing pages 7 of 7 in NJ/CDR 1/1/2017 format as to all three CDR 2 numbers. As well as Pages 1 of 7, 2 of 7, 3 of 7, 4 of 7, 5 of 7, 6 of 7 in NJ/CDR 7/20/2018 format. Complainant's address **115 Vine Street, Bridgeton, NJ 08302**[5]  is found on page 4 of 7, 5 of 7 in NJ/CDR 1/1/2017 format and

---

[3]
https://portal.njcourts.gov/webe41/ExternalPGPA/#:~:text=Attempts%20to%20interfere%20with%20the,or%20disciplinary%20action%20where%20appropriate.

[4] The public may seek personal assistance at its administration office at 43 Fayette St. between 8:30 a.m. and 4:30 p.m. between Sept. 2 and Sept. 4. People may start visiting the Vine Street location on Monday, Sept. 8. The main phone number and fax will remain the same. Cumberland County Prosecutor's Office moving to new building Updated: Aug. 27, 2014 https://www.nj.com/cumberland/2014/08/cumberland_county_prosecutors_office_moving_to_new_building.html

[5] "On Tuesday, the Cumberland County Prosecutor's Office began moving into its brand new, multimillion-dollar headquarters on Vine Street. The new three-story facility, located at 115 Vine Street, will consolidate about 100 employees from four buildings." Cumberland County Prosecutor's office moving into new building, Sept. 2, 2014

pages 7 of 7 in NJ/CDR 7/20/2018 format. According to the current municipal court administrator (Dippolito) the only documents in the basement case file are reflected by the certified copies with seal attached to this motion. Plaintiff raises the issue that the Court Administrator has a "duty to maintains records of criminal and traffic tickets for attorneys, defendants, residents, and the general public."[6] "As is true of all other courts, they maintain adequate records under general supervision of the Administrative Director. " State v. Mull, 30 N.J. 231, 236 (N.J. 1959). The Court Administrator (Dippolito) asserts that she doesn't know what happened to the missing pages. Plaintiff contends that either the Court Administrator is mistaken about the case file contents or the defendants have destroyed or tampered with the missing evidence.

---

https://www.nj.com/cumberland/2014/09/cumberland_county_prosecutors_office_begin_move-in_at_new_vine_street_facility.html

[6] *Velasco v. Commercial Bldg. Maintenance Co., supra* (where alleged spoliator was not a party to a products liability civil litigation but destroyed evidence of the claim); *Smith v. Superior Court for Cty. of Los Angeles, supra* (where alleged spoliator was a potential defendant which agreed to preserve the physical evidence that served as a basis for plaintiff's products liability claim). *Fox v. Mercedes-Benz Credit Corp.*, 281 N.J. Super. 476, 482 (App. Div. 1995) tampering with public documents, in violation of N.J.S.A. 2C:28-7a(2), which defines tampering with public records as: (1) [k]nowingly mak[ing] a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government; [or] (2) [m]aking, present[ing], offer[ing] for filing, or us[ing] any record, document or thing knowing it to be false, and with purpose that it be taken as a genuine part of information or records referred to in paragraph (1); . . . . State v. Lemkin, DOCKET NO. A-4077-12T3, 10 (App. Div. Jul. 2, 2014) Pursuant to N.J.S.A. 2C:28-7(a)(1), a person tampers with public records or information if he or she "[k]nowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by other for information of the government." Here, defendant oversaw the preparation of and presented the District with financial disclosure forms and purchase orders. Both sets of documents contained false information. The forms were regularly exchanged between the District and defendant, either in her capacity as a PRC Supervisor or as president of the NJAPC. State v. Taliaferro, Docket NO. A-5494-13T2, 16 (App. Div. Jul. 18, 2017) https://www.vinelandcity.org/municipal-court/

Plaintiff is also in the same position as <u>Fox</u>[7] to the extent that he could not have discovered the invalid eCDR-2 arrest warrant applications without the Vineland Municipal Court's partial disclosure via NJ Records Request. Plaintiff maintains entitlement to relief as a result of the defendants placing altered electronic documents among unaltered manual documents. By randomly placing altered electronic documents among unaltered manual documents stored in the municipal court Basement, defendants effectively concealed or materially altered the evidence. The plaintiff challenges the existence and accuracy of the 1/1/2017 formatted ECDR-2 arrest warrant applications, as these documents contradict the factual and adjudicative findings made by the municipal court in support of its June 20, 2013, decision. Additionally, the City of Vineland Municipal Court's response to a New Jersey records request for certified copies of arrest warrant applications prepared by defendant Lynn A. Wehling includes copies in the 1/1/2017 format. Plaintiff's challenges to the eCDR-2 applications in 1/1/207 and 7/20/2018 formats (falsely altered documents) is supported by adjudicative facts regarding the manual CDR-2 applications (forgeries) in 8/1/2005 format adduced in the related Vineland Municipal Court proceedings:

---

[7] "The belatedly provided discovery also was not concealed in a manner similar to the concealment in Viviano where plaintiff discovered the evidence by her own means rather than through a turnover in discovery. MBCC provided the documents in the supplemental discovery. Fox could not have discovered the documents without MBCC's voluntary disclosure, a point conceded in the complaint filed in this action. That turnover gave Fox full use of all the documents at the deficiency action remand trial. Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 480-81 (App. Div. 1995) Holding party liable for placing altered files among thousands of unaltered files. "By randomly placing altered files among tens of thousands of unaltered files spread over more than four hundred boxes, GAF effectively concealed or materially altered the evidence." Bldg. Materials Corp. of America v. Allstate Ins. Co., 424 N.J. Super. 448, 473 (App. Div. 2012) Although spoliation most often arises in the context of destroyed evidence, it is equally applicable to situations where evidence has been concealed or materially altered. See Tartaglia v. UBS PaineWebber, Inc.,197 N.J. 81, 116–19, 961 A.2d 1167 (2008) (discussing the history of spoliation in our case law). The key in any situation is the effect the spoliator's actions had on the aggrieved party's ability to present its case. Ibid Bldg. Materials Corp. of America v. Allstate Ins. Co., 424 N.J. Super. 448, 474 (App. Div. 2012)."

**THE COURT:** "I do note that on Summons No. 2010-1690 [T2 Line 23, P. 20] on the CDR-2 form, **Mr. Mujaddid is correct, no probable cause finding is noted as far as** [T2 Line 24, P.20] **probable cause to issue the complaint. And the same is** [T2 Line 25, P.20] **true of the other two complaints.**" "There is a court rule that allows the signature of Judge [T2 Line 8, P.21] Becker to be conformed [T2 Line 9, P.21], but here we are, the matter is [T2 Line 10, P. 21] three years later, I'm guessing that the Officer put-[T2 Line 10, P.21] simply put down in the wrong spot writing Judge [T2 Line 12, P.21] Becker's name down, but that's just a guess. I don't know [T2 Line 12, P.21]. The complaint says what it says. There it's [T2 Line 13, P.21] **blank as far as probable cause determination ever being made.**" [T2 Line 14-15, P. 21] I do have, I think, significant speedy trial concerns under Barker [T2 Line 19, P.21] v. Wingo and most recently enunciated by State v. [T2 Line 20, P.21] Cahill. I am concerned about this, Ms. Acosta, and I [T2 Line 21, P.21] am inclined to dismiss the matters. **The probable cause determination is not noted.** [T2 Line 22-23, P.21]…**It just, it doesn't seem to me that** [T2 Line 25, P. 21] **the complaints have the issuance that's demanded by** [T2 Lines 1-2, P. 22] **the court rule**, and I do note the matters are very, very old. Seems to me that the...concerns expressed by State v. Cahlill are real. [T2 Lines 3-5, Pg.22.] So, I don't, I'm not the one to elevate form over substance, but **the CDR form says what it says, and it demands, I think, adherence. There's no notation on the front of the probable cause has been found** [T1 Lines 12-15, P.25] In the end, **there is a court rule that says this Court can conform the signature but I'm uncomfortable doing so three years down the road. It seems to me that even if I did that would I then be saying that the summons is now issued**... [T2 Lines 19-23, P. 25] "**In the end, I make my decision based on not only the lack of conformance of that signature in so many years… I am concerned about the lack of adherence to what I'll call the formalities of CDR-2 which is the finding of probable cause**..."[8]

---

[8] Collateral estoppel, or issue preclusion, is an equitable principle which provides "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (1982)). The doctrine facilitates society's interest in "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness." Ibid. (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006)).

## JURISDICTION AND VENUE

1.      Plaintiffs bring claims under 42 U.S. Code § 1983 - Civil action for deprivation of rights;  the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.; and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

2.      This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the laws of the United States. This Court has jurisdiction over the supplemental claims arising under New Jersey state law pursuant to 28 U.S.C. § 1367(a).

3.      Equitable Exception To The Statute Of Limitations: The discovery rule, equitable tolling and continuing violation doctrine applies here because there is alleged retaliatory conduct by the defendant Wehling and state and or municipal actors in concert which was discovered January 25th, 2023. Plaintiff stands on Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999), where the Court held the continuing violation doctrine provides that when one endures "a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." "[T]he conduct becomes . . . actionable because of its continuous, cumulative, synergistic nature." Id. at 273 (quotations omitted). the discovery rule and the equitable tolling doctrine are similar in one respect and different in another. Plaintiff took reasonable measures to uncover the existence of injury. See Keystone Insurance, 863 F.2d at 1127 (making this point with regard to the discovery rule); Reeb, 516 F.2d at 930 (making this point with regard to equitable tolling). The two doctrines differ, however, with respect to the type of knowledge or cognizance that triggers their respective applications. The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury. See Merrill, 806 F.2d at 604-05. Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of

the facts supporting the plaintiff's cause of action. Underlying this difference between the discovery rule and equitable tolling is the more fundamental difference in purpose between the two rules. The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run. Equitable tolling, at least as the doctrine might apply in Oshiver's case, presumes claim accrual. Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.

4.      Venue is proper for the United States District Court for the District of New Jersey pursuant to 28 U.S.C § 1391 (a), (b), and (c) because the claims arose in this district and the parties reside in this district. A final judgment must grant the relief to which the prevailing party is entitled, 'even if such party has not demanded such relief in his pleadings.'" "So viewed Fed.R.Civ.P. 54(c) controls: every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *Thorstenn v. Barnard*, 883 F.2d 217, 218 (3d Cir. 1989)

## PARTIES

5.      Plaintiff El Aemer El Mujaddid natural born private Citizen of the United States and New Jersey State who resides at 25 Maplewick Lane, Willingboro Nj 08046.

6.      Defendant Lynn A. Wehling is or was a Cumberland County Detective employed by the Cumberland County Prosecutors Office located at 115 Vine St, Bridgeton, NJ 08302.

## FACTUAL ALLEGATIONS

7.      At all times relevant to the instant matter, Defendant Wehling was (and remains) a law enforcement officer employed by Cumberland County Prosecutors Office and was never a

judicial officer employed by the Superior Court of New Jersey; nor was Defendant Wehling a prosecutor or attorney working for Defendant Cumberland County [Exhibit 499].

8.      On April 21, 2010, Defendant Wehling as a County Detective employed by the Cumberland County Prosecutors Office, caused arrest warrant applications No.'s W06142010001690; W06142010001691; and W06142010001692 to be filed with the Cumberland County Prosecutors Office on April 21, 2010 contrary to the 2010 version of N.J. Ct. R. 3:3-3 (e) [Exhibit 450] , N.J. Ct. R. 7:2-3(c) [Exhibit 443] and the Vineland Municipal Court on (or about) September 18, 2012, contrary to N.J. Ct. R. 3:3-3 (e), N.J. Ct. R. 7:2-3(c) wherein Defendant Wehling charged Plaintiff (as a defendant) without probable cause under: (1) N.J.S.A. 2C:35-10A(1) Possession, use or being under the influence, or failure to make lawful disposition; (2) N.J.S.A. 2C:35-5B(3) Manufacturing, Distributing or Dispensing; (3) N.J.S.A. 2C:39-3 - Prohibited weapons and devices; (4) N.J.S.A. 2C:35-10A(1) Possession, use or being under the influence, or failure to make lawful disposition; (5) N.J.S.A. 2C:35-5B(3) Manufacturing, Distributing or Dispensing; (6) N.J.S.A. 2C:39-3 - Prohibited weapons and devices; (7) N.J.S.A. 2C:29-1A Obstructing administration of law or other governmental function; and (8) N.J.S.A. 2C:29-3B(4) - Hindering apprehension or prosecution **(hereinafter collectively referred to as "2010 Forged Arrest Warrant Applications " [Exhibit 4-15].**

9.      On March 22, 2013, plaintiff filed a complaint with the CCPO Internal Affairs against CCPO Sgt. Steve O'Neil for Assault and Sexual Assault. On April 2, 2013, First Assistant Prosecutor Harold B. Shapiro wrote a Supersession letter [Exhibit 463] to the Division of Criminal Justice misrepresenting to the Division of Criminal Justice that the secondary search of Plaintiffs conducted by O'Neil was the only search, while having information that Plaintiff was removed from the bed, searched, and handcuffed (secured) by NJSP T.E.A.M.S. Unit/South officers who

broke into the McArthur house, without knocking. Shapiro's narrative purporting Plaintiff was only searched by O'Neil is directly contradicted by the narrative provided by defendant Lynn Wehling to David Hogan [Exhibit 517-519].

10.    In addition, Defendant Shapiro misrepresented to the Division of Criminal Justice that Plaintiff was charged under W-2010-001690-0614 and W-2010-001692-0614 and that on September 18, 2012, Assistant Prosecutor Jonathan M. Flynn of this office, referred the matter to the Vineland Municipal Court for disposition, after amending or administratively dismissing the original charges [Exhibit 37-39, 464].

11.    On May 1, 2013, Judge Kasper of the Vineland Municipal Court stated on the record in response to Plaintiff's position regarding the 2010 Forged Arrest Warrant Applications (Pa 4- Pa 15), that: (1) the 2010 Forged Arrest Warrant Applications that were issued by Defendant Wehling, were not affixed with the signature of Judge Robert P. Becker (Pa70) in accords with (2010) N.J. Ct. R. 3:2-3(b) [Exhibit 437] and N.J. Ct. R. 7:2-1(e) [Exhibit 440]; (2) There was no finding of probable cause noted on the face of the 2010 forged arrest warrant applications contrary to N.J. Ct. R. 7:3-1(b)(2) [Exhibit 506] and (3) absent a judge's signature, the applications were technically insufficient, irregularities, unconstitutional and defective (1T Pg. 13); and (4) no exigent circumstances existed for a Judge to authorize issuance of telephonic arrest warrants contrary to Wehling's three certifications under oath upon the applications purported Superior Court Telephonic Issuance (1T Pg. 14).

12.    On May 01, 2013, the Vineland Court Administrator found probable cause against Defendant Wehling under N.J.S.A. 2C:13-3 - False imprisonment. On May 01, 2013, the Honorable Judge John A. Kasper found probable cause against Defendant Wehling for N.J.S.A. 2c:28-2 - False swearing, N.J.S.A. 2C:28-4 False Reports To Law Enforcement Authorities;

N.J.S.A. 2C:30-6 Crime Of Official Deprivation Of Civil Rights, N.J.S.A. 2C:13-8 Human trafficking and 18 U.S. Code § 1581 - Peonage; obstructing enforcement [Exhibit 40-53, 415], in relation to Defendant Wehling's false arrest warrant applications, false reports and charging of Plaintiff (as a defendant) on April 21, 2010 in the jurisdiction of Vineland, New Jersey upon Defendant Wehling's execution of the 2010 Forged Arrest Warrant Applications.

13.    The NJ OAG Division of Criminal Justice replied to a supersession request [Exhibit 44] by the Cumberland County Prosecutors Office in State v. Lynn A. Wehling under the defendant McRae's supervision. The letter misrepresented to the Division of Criminal Justice that the Plaintiff had made a complaint against the defendant Wehling for conduct during the obtaining and execution of an April 21, 2010, "**search warrant against Plaintiff**", knowing that no search warrant was issued for Plaintiff.

14.    Defendant Wehling fabricated an investigative report [488-489] on or about April 21, 2010, using Plaintiffs lawfully changed given name Cornell Dixon in place of his Muslim/Moorish name and racially profiling plaintiffs "Race" as "Black" [Exhibit 305-372, 460, 490, 520] in place of his actual "Race" (Moor) [Exhibit 304] based on his disability and or skin color (dark skin pigment, melanism) [Exhibit 460]. The "Investigative report" was backdated to March 10, 2010 [Exhibit 488-489]. Defendant Wehling, having no knowledge of the plaintiff before April 21, 2010, input the Plaintiff's given name at the top of this investigative report after April 21, 2010, without cause. The investigative report pertains exclusively to Scott McArthur and is not signed by defendant Wehling, nor by a CCPO Supervisor.

15.    On June 3, 2010, Defendant Wehling authored an unsigned "Supplemental Report" [Exhibit 464] concerning April 21, 2010, that stated:  The New Jersey State Police T.E.A.M.S Units executed the knock and announce search warrant at the residence at approximately 7:00 a.m.

The personnel that assisted with the entry and search of 219 West Park Ave., Vineland, NJ are as follows: Entry Team: NJSP T.E.A.M.S Unit /South".

16.    The report also stated: "Mr. El was very combative, began yelling and pulling away from Det. O'Neill when he was patted down for any weapons."

17.    Defendant Wehling omitted the fact that Steve O'Neil sexually assaulted and assaulted plaintiff,  after he was discovered in a guest bed, searched, secured, and his hands restrained behind his back by NJSP T.E.A.M.S Unit /South officers who conducted the protective sweep, upon their no-knock entry into the residence. Following the NJSP T.E.A.M.S Unit /South officers removal from the property, O'Neil subjected only Plaintiff to a secondary search of his person. Once, Plaintiff orally protested the groping of his genetilia and anus, O'Neil pushed the plaintiff into a wooden banister, while plaintiffs hands were restrained behind his back.

18.    Defendant Wehling after observing O'Neil's assault upon Plaintiff initiated in-custody interrogation as to Plaintiff's Social Security Number without providing adequate disclosures (whether he had to provide his social security number, what authority she relied on in asking for the number, or what the number would be used for) in violation of the Privacy Act of 1974 section 7(b) See 5 U.S.C. § 552a note; 88 Stat. 1909., N.J. Const. Art. I (Right to Privacy) [Exhibit 681] and Fourteenth Amendment (Right to Privacy), and as to his Name and address without advising Plaintiff of his Miranda rights [Exhibit 54, 646].

19.    On June 20, 2013, Defendant Wehling appeared at a motion hearing before the Honorable Judge Thomas North in the Vineland City Municipal Court [Exhibit 517-519], in which Plaintiff had (1) challenged personal jurisdiction based upon not being served with copies of the 2010 forged arrest warrant applications [Exhibit 88], (2) motioned for sanctions [Exhibit 88], (3) motioned to dismiss based on a lack of probable cause, for charges Lacking any Statutory Basis

and failure to Comply with Rule 3:2-3, (4) motion to dismiss under speedy trial rights and (5) motion in limine to bar Wehlings inconsistent statements.

20.    Judge North dismissed the malicious prosecution [Exhibit 88-89, Pa708] against Plaintiff (as a defendant) arising from the foregoing 2010 Forged Arrest Warrant Applications made by Defendant Wehling on April 21, 2010, [Exhibit 4-15] and transferred by Johnathan M. Flynn after the statute of limitations for disorderly persons offenses N.J. Stat. § 2C:1-6 [Exhibit 419] to the Vineland Municipal Court on or about September 18, 2012, after carefully examining the documents.

21.    On June 20, 2013, in regards to the prosecution of Plaintiff (as a defendant) arising from the 2010 Forged Arrest Warrant Applications created by Defendant Wehling, Judge North of the Vineland City Municipal Court summarized that no probable cause determination was made by Judge Becker upon all three (3) arrest warrant applications that were issued by Defendant Wehling as the complaining witness; and Judge North noted that the 2010 Forged Arrest Warrant Applications were devoid of Judge Becker's signature(s) and questioned his ability to conform the missing signatures three years down the line [2T Pgs. 20-22].

22.    Within the foregoing 2010 Forged Arrest Warrant Applications, Defendant Wehling handwrote therein that the Honorable Judge Robert P. Becker of the Superior Court of New Jersey - Cumberland Vicinage, telephonically set a $50,000.00 "CASH ONLY" bail as to the Plaintiff (as a defendant); and further certified within said applications "Per SCJ R. Becker" "Telephonic". Rule 3:2-3(b) directed applicants to print their name, the date and time of the warrant, followed by the phrase "By Officer___, per telephonic authorization by___ [Exhibit 437].

23.    The foregoing 2010 Forged Arrest Warrant Applications  (NJCDR-2-8/1/2005 format) [Exhibit 4-15] that were created by Defendant Wehling were not issued by Superior Court

Judge Becker, as required by N.J. Const. Art. I (Rights and Privileges), N.J. Const. Art. III (Separation of Power) and the Fourth Amendment of the United States Constitution and defendant Wehling did not serve the Plaintiff with a copy [Exhibit 4- 15] on April 21, 2010, nor anytime thereafter as required by the 2010 version of N.J. Ct. R. 3:3-3(c) Execution or Service; Return and its counterpart under N.J. Ct. R. 7:2-3(b) Arrest Warrant; Execution and Service: Return.

24.    Honorable Judge Robert P. Becker, Jr. did not file the foregoing 2010 Forged Arrest Warrant Applications [Exhibit 4-15] – that were fabricated by Defendant Wehling – with the Criminal Division Manager [Exhibit 16-21] nor the Vineland Municipal Court within 48 hours of April 21, 2010, as required by the 2010 version of N.J. Ct. R. 3:2-1. Contents of Complaint; Forwarding of Indictable Complaints to Prosecutor and Criminal Division Manager [Exhibit 434-459].

25.    Honorable Judge Robert P. Becker, Jr. did not memorialize the date, time, defendants name, complaint numbers, nor the basis for a probable cause determination, nor any other specific terms of authorization by means of a tape-recording device, stenographic machine, or adequate longhand notes, as required by the 2010 version of N.J. Ct. R. 3:2-3. Arrest Warrant (b) nor N.J. Ct. R. 7 :2-1(e) Contents of Complaint, Arrest Warrant and Summons [Exhibit 434-459] regarding the foregoing 2010 Forged Arrest Warrant Applications [Exhibit 4-15, 17-21, 30-36]

26.    There is no record of Honorable Judge Robert P. Becker, Jr. directing Lynn A. Wehling to print his name on the foregoing 2010 Forged Arrest Warrant Applications [Exhibit 4-15] Exhibit 18, 21, 30-36] in accord with N.J. Ct. R. 3:2-3. Arrest Warrant (b).

27.    There is no record of Honorable Judge Robert P. Becker, Jr. setting a $50,000.00 upon the Plaintiff. Under New Jersey's Constitution, state law and N.J. Ct. R. 3:4-1(b)(2) [Exhibit 502-504] required that bail be set within 12 hours of the issuance of a criminal complaint.

28.    Plaintiff was not brought before a judge, a clerk or deputy clerk, municipal court administrator or deputy court administrator "without unnecessary delay" until May 7, 2010, contrary to N.J. Ct. R. 3:4-1(a)(2) [Exhibit 502].

29.    Defendant Wehling did not provide a copy of the foregoing 2010 Forged Arrest Warrant Applications to Plaintiff, ever.

30.    Honorable Judge Robert P. Becker, Jr. did not contemporaneously record sworn or oral testimony of defendant Wehling by means of a tape-recording device or stenographic machine, nor adequate longhand notes summarizing testimony [Exhibit 18-21, Exhibit 30-36].

31.    Defendant Wehling did not assert or establish any grounds or basis constituting exigent circumstances [Exhibit 74, 646] that would authorize telephonic applications for arrest warrants.

32.    Honorable Judge Robert P. Becker, Jr. did not make a recording or record of factual determinations as to exigent circumstances [Exhibit 17- 21, Exhibit 30-36].

33.    Honorable Judge Robert P. Becker, Jr. did not direct transcribing of any testimony against the Plaintiff [ Exhibit 17-21, Exhibit 30-36].

34.    Defendant Wehling did not deliver the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] nor any supporting affidavits concerning Plaintiff (as a defendant) to Honorable Judge Robert P. Becker, Jr. nor the Criminal Division within 48 hours of April 21, 2010 [Exhibit 17], as required by NJ Ct. R. 3:3-3(c) [Exhibit 452] and NJ Ct. R. 7:2-3(b) [ Exhibit 443].

35.     Honorable Judge Robert P. Becker, Jr. did not verify the accuracy of the three (3) 2010 Forged Arrest Warrant Applications by affixing his signature thereto [ Exhibit 4- 15, 16, 17-21, 30-36,  487) as required by N.J. Ct. R. 3:2-3 (b) [ Exhibit 437].

36.     On April 27, 2010, Honorable Judge Robert P. Becker, Jr. filed a letter [Exhibit 17] with the Criminal Division that specifically and only pertains to the receipt of a Search Warrant for Scott McArthur with an attached affidavit on application for a search warrant [Exhibit 492] concerning Scott McArthur executed by defendant Wehling, which the appellate division addressed in State v. McArthur, Docket No. A-2147-14T2 (App. Div. Jun. 3, 2016) DOCKET NO. A-2147-14T2 06-03-2016. The Third page [Exhibit 494] of the Search Warrant Affidavit identifies Cape May County [Exhibit 41-49, Pa55-59, 95-100 490-491] Police Academy as a School of Study which demonstrates a conflict of interest as to State v. Wehling's transfer to Cape May.

37.     On May 7, 2010, Public Defender Jeffrey Clavins caused plaintiff to be brought before the Superior Court (Cumberland) on a motion for bail hearing [Exhibit 145] which was held before the Honorable Judge Telsey of the Superior Court of New Jersey – Cumberland Vicinage contrary to the 12 Hour requirements of N.J. Ct. R. 3:4-1(b) [Exhibit 502], contrary to the 72-Hour requirements of N.J. Ct. R. 3:4-2 [Exhibit 504]. At the hearing before Judge Telsey the CCPO requested Judge Telsey to set a bail [Exhibit 145]. Judge Telsey denied the bail request [Exhibit 145] after the CCPO admitted Plaintiff was not the target of the search warrant Exhibit 487, 492].

38.     Plaintiff (as a defendant) was not furnished with a copy of the 2010 Forged Arrest Warrant applications [Exhibit 4-15] during the May 7, 2010, hearing before Judge Telsey in accordance with the N.J. Ct. R. 3:4-2 (b)(1) [Exhibit 504] First Appearance After Filing Complaint; and the same departure from N.J. Ct. Rule 7:3-2(a) [Exhibit 506] occurred in the first Vineland Municipal Court appearance held on October 11, 2012 and each hearing after that held in the

Vineland Municipal Court on October 25, 2012, November 8, 2012, November 29, 2012 contrary to the N.J. Ct. Rule 7:3-2(a) [Exhibit 506].

39.     On or about November 8, 2012, Inez Acosta told the Plaintiff that the 2010 Forged Arrest Warrant applications [Exhibit4-15] were not discoverable materials contrary to N.J. Ct. R. 7:7–7, Due Process and despite the documents being exculpatory and material evidence. Inez Acosta never provided a copy, and plaintiff never obtained a copy of pages 4 of 7, 5 of 7, 6 of 7 and 7 of 7 of the 2010 forged arrest warrant applications [Exhibit4-15].

40.     On or about October 27, 2010 [Exhibit 22-29], the Cumberland County Prosecutors Office ascribed the status of "downgraded" to the 2010 forged arrest warrant applications [Exhibit 4-15].

41.     Defendants McRae and Johnathan M. Flynn failed to provide Plaintiff with a copy of the 2010 Forged Arrest Warrant Applications [Exhibit4-15] upon receipt of  discovery request in September 2012 contrary to N.J. Ct. R. 3:13–3(a) and N.J. Const. Art. I (Due Process).

42.     On September 18, 2012, the Plaintiff received a letter [Exhibit 37] from Jonathan M. Flynn in his capacity as Assistant Cumberland County Prosecutor, in reply to Plaintiff's discovery request (as a defendant), wherein Johnathan M. Flynn gave notice that the 2010 Forged Arrest Warrant Applications were amended, downgraded and transferred to the Vineland Defendants for the latter to continue prosecution against Plaintiff (as a defendant) one (1) year after the one (1) year disorderly persons statute of limitations set forth at N.J.S. 2C:1-6 Time limitations [Exhibit 419]; and directing Plaintiff seek discovery from the Vineland Defendants.

43.     On September 18, 2012, two disposition determination letters addressed to the Vineland Municipal Court and the 2010 forged arrest warrant applications were filed with the Cumberland Criminal Division [Exhibit 37-39, 487] in the name of Jonathan M. Flynn assistant

Cumberland County Prosecutors Office stating the matter initiated by defendant Wehling had been reviewed by his office and that his office determined that the most appropriate forum for disposition was the Vineland Municipal Court, and that the original charges have either been administratively dismissed or amended as follows.

44.     On May 16, 2013, the NJ OAG replied to a supersession request [Exhibit 42] in State v. Lynn A. Wehling under the defendant McRae's supervision. DAG Murphy stated in reply to the request that Detective Lynn Wehling had been named in a complaint by Plaintiff.

45.     DAG Murphy reply demonstrated that the CCPO represented to the Division that the complaint by Plaintiff against Lynn Wehling was a criminal allegation of sexual assault when Plaintiffs sexual assault complaint was against Steve O'Neil who knew the Plaintiff was not armed and posed no serious and present danger to his safety because Plaintiff had already been searched and secured by N.J.S.P. TEAMS Unit South and his hands were restrained behind his back.

46.     On Oct 02, 2013, Jennifer Webb-McRae filed an Order [Exhibit 41] with the Criminal Division to cause the Transfer of State v. Lynn A. Wehling to Cape May County, while plaintiffs original civil action was pending against both defendants Wehling and Jennifer Webb McRae.

47.     On March 4, 2014, Matthew Bingham Assistant Cumberland County Prosecutor replied [Exhibit 30-34] to an OPRA Request for telephonic arrest warrant evidence, stating that it had no documents responsive to OPRA and Common Law request for "7) sworn oral testimony of Lynn A. Wehling provided to Judge Becker for the issuance of CD2 No's 0614W2020001691; 0614W2010001692, 061W2020001690; 8.) Lynn A. Wehling's sworn oral testimony by means of a tape-recording device or stenographic machine; 9) adequate longhand notes of what was said, 10) the transcribed record certified by Judge Becker."

48.     On March 6, 2014, Matthew Bingham Assistant Cumberland County Prosecutor replied [Exhibit 35- 36] to an OPRA and Common Law request for the 2010 version of N.J. Ct. R. 3:2-3(b) [Exhibit 437-452] telephonic evidence of the tape or stenographic record of any Oral testimony made by Lynn A. Wehling against Plaintiff on April 21, 2010 and states: We have no documents responsive to your request.

49.     On May 9, 2014, Cumberland County Trial Court Administrator Mark Sprock reply Exhibit 19-21) to a New Jersey Court Records Request seeking evidence of judicial issuance of Superior Court ( Cumberland Vicinage) telephonic arrest warrant applications.

50.     The letter advised that the Superior Court has no record on file of a search warrant under the name of El Aemer A. El Mujaddid a/k/a Cornell C. Dixon [Exhibit19] and that there is no known record of testimony made against Plaintiff given by Lynn A. Wehling to the Superior Court [Exhibit 20].

51.     On March 28, 2014, the Honorable Judge Robert G. Millenky memorialized that Plaintiff alleged his arrest on April 21, 2010 was illegal because there was no probable cause [Exhibit 88], and because he was subjected to excessive and deadly force [Exhibit 522] during the arrest and secondary search of his person [Exhibit 80] and that Plaintiffs Complaint contained allegations saying that the action arises directly from the conduct of defendant Lynn A. Wehling, Webb-McRae, Jonathan M. Flynn and the Cumberland County Prosecutors Office, saying that -- in paragraph 158 -- that those state actors are collectively responsible for sending the city of Vineland Municipal Court and Vineland prosecutors invalid arrest warrant applications to be prosecuted while knowing that they were invalid and had not been executed in compliance with the court rules [3T Lines 10-18 Pg. 5.]

52.     N.J. Ct. R. 3:2-1 (2010) commanded: The complaint shall be forwarded by the municipal court to the criminal division manager's office within 48 hours. N.J. Ct. R. 3:2-3(b) [Exhibit 437] directed: On approval, the judge shall memorialize the date, time, defendant's name, complaint number, the basis for the probable cause determination and any other specific terms of the authorization. That memorialization shall be either by means of a tape-recording device, stenographic machine, or by adequate longhand notes. The judge shall verify the accuracy of these documents by affixing his or her signature to the Complaint-Warrant (CDR-2)

53.     On May 23, 2014, DAG Kelly stated on the record that Plaintiffs claims specifically limited to just Ms. Gallagher stemmed from the discovery dispute underlying plaintiff's Municipal Court criminal proceedings, and that Plaintiff was suing the Criminal Division under a number of constitutional causes of action and writs of mandamus because the criminal division wasn't able to provide the 2010 forged arrest warrant applications affixed with the signature of Honorable Judge Robert P. Becker, Jr.; memorialization by means of a tape-recording device, stenographic machine, or by adequate longhand notes [Exhibit 18-21, 6T Lines 9-17 Pg. 20].

54.     On July 1, 2014, CCPO First Assistant Prosecutor Harold B. Shapiro drafted a Supersession letter [Exhibit 468- 469] which the Division of Criminal Justice [Exhibit 44] used to construe Plaintiffs citizen complaints against Defendant Wehling was for conduct during the obtaining and execution of an April 21, 2010, search warrant against Plaintiff, the letter misrepresented the Plaintiff as if he was Scott McArthur.

55.     On July 1, 2014, Honorable Judge Robert G. Millenky on the matter below, issued a written opinion memorializing the admission by the Criminal Division of the Superior Court – Cumberland Vicinage that the Ms. Gallagher the Criminal Division Manager denied having possession of the 2010 Forged Application Warrants that were created by Defendant Wehling on

April 21, 2010 [Exhibit 67] upon which she purported to have been telephonically issued by Superior Court Judge Honorable Robert P. Becker Jr. Judge Millenky further stated in his written opinion that the record for the motions to dismiss did not contain full copies [Exhibit 4-15] of the 2010 forged arrest warrants applications [Exhibit74].

56.     For purposes of denying prerogative writs for discovery the State Courtopined in its July 1, 2014, and August 1, 2014, written opinions that Plaintiff ultimately received the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] via NJ Court Records Request to the Vineland Municipal Court Exhibit5] but failed to acknowledge that the Vineland Municipal Court only provided copies of the first two pages of seven (7) for each of the 2010 Forged Arrest Warrant Applications [Exhibit 4-15].

57.     On May 12, 2014 the Vineland Municipal Court found probable cause against the Defendant Wehling on Citizen Complaints filed by Abul Futuh Mujaaahid Bey (a.k.a. Scott McArthur) [Exhibit 469] under N.J.S. 2C:20-3A Theft by unlawful taking or disposition CDR-1 No. 0614S2014001501; N.J.S. 2C:20-4A Theft by deception CDR-1 0614S2014001502; N.J.S. 2C:13-3 Theft by deception CDR-1 No. 0614S2014001506, N.J.S. 2C:28-2A False swearing CDR-1 No. 0614S2014001507, N.J.S. 2C:20-6 theft of property lost, mislaid, or delivered by mistake CDR-1 No. 0614S2014001509, N.J.S. 2C:28-4(c) False reports to law enforcement authorities CDR-1 No. 0614S2014001574 which asserted that defendant Wehling while under oath asserted that she had in fact used marked monies on or about February 02, 2010 and April 04, 2020 with an informant who allegedly purchased marijuana from Scott McArthur and logging the alleged evidence into the evidence room.

58.     On August 1, 2014, Honorable Judge Robert G. Millenky on the matter below, issued a written opinion [Exhibit 159] finding that Plaintiff's complaint alleged a lack of probable

cause for first, the criminal action against him, and later, the disorderly person charges against him in municipal court, that plaintiff raised the prospect of malice, by alleging that the actions of defendant Wehling, who was allegedly instrumental in charging him after his arrest, were later subject to criminal investigation. In addition, plaintiff alleged a scheme of discriminatory conduct by law enforcement and the prosecutors who may also support a finding of malice [Exhibit 88]. Judge Millenky also assumed for purposes the Cumberland defendants and Vineland defendants motion to dismiss that the Cumberland defendants suppressed evidence that was favorable to plaintiff [Exhibit 84].

59.     On August 1, 2014, Honorable Judge Robert G. Millenky issued a written opinion [Exhibit 88] memorializing that Cumberland defendants, which include the County of Cumberland, the Prosecutors Office, Jennifer Webb-McRae, Jonathan M. Flynn, and Lynn Wehling, alleged that the statute of limitations as to them had run and that they were not involved in the prosecution after it was transferred to the municipal court [Exhibit 92].

60.     On August 7, 2014 the defendant Wehling stated in an interview [Exhibit 517-519] to Cape May County Detective David Hogan that Plaintiff's charges, were separated from the McArthur case and got sent down to the municipal court level, which she (defendant Wehling) received municipal court summonses to show up, that she went for Alvin McArthur and the Vineland defendants said they pled Alvin McArthur down to a city ordinance, defendant Wehling continued that she went to the Vineland Municipal Court for Plaintiff and the Vineland Municipal Court said the same thing. Defendant Wehling also stated that her subpoena said one time Plaintiff was there in the morning, so they took Plaintiff, and they pled plaintiff to some sort of city ordinance, and then defendant Wehling stated she kept receiving more summonses to come back to Vineland municipal court for Plaintiff.

61.     Defendant Wehling stated in this interview that she was made aware of by the last time she was in Vineland Municipal court, that Plaintiff had advised that, judge Becker's signature was in the wrong spot, when she knew Plaintiff argued that Judge Becker did not sign the documents and that the Vineland Municipal Court had found such to be true.

62.     Following this interview, Hogan falsified statements in a report [Exhibit 488] stating Wehling's complaints were approved telephonically and, but Wehling made a clerical error and signed Becker's name on the line below where it belonged.

63.     The Superior Court case initiated by the Cumberland County Prosecutors Office against the Plaintiff remains "Active" all these years later [Exhibit 410] after Municipal Court adjudication, while State v. Wehling is listed as "Completed" [Exhibit 415] contrary to their statute of limitations defense made before the State Court(Camden).

64.     On September 9, 2014 the State filed a Brief [Exhibit 57-59] in the Supreme Court of New Jersey stating that (1) Plaintiff was the complainant and alleged victim; (2) that the complaints against defendant Wehling were precipitated by the execution of a search warrant at a residence where Plaintiff was a bystander (3) that Ultimately, no charges were filed against Plaintiff [Exhibit 58] (4) Plaintiff was a bystander during the execution of a search warrant by the CCP (5) Plaintiff was not the owner of the resident of the location targeted by the search warrant and (6) Plaintiff was not the target of the search warrant [Exhibit 59].

65.     During December 11, 2015, Motion For Return of Unlawfully Seized Property Proceeding [Exhibit 60, 10T] Judge Robert G. Malestein memorialized that (1) the plaintiff submitted a motion for return of certain property that was seized, from Plaintiff during the course of a search warrant, for which the plaintiff was not a target of the [search] warrant (2) that Plaintiff was charged initially in several [arrest] warrants [applications], which were ultimately dismissed

and (3) that the State did not object to the return of that personal property [Exhibit 128 Lines 16-25, P.3]

66.    On January 25, 2023, Plaintiff discovered the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 137-150, 156-265] generated by the defendant Lynn A. Wehling under the same CDR-2 No. W06142010001690; W06142010001691; W06142010001692 dismissed on June 20, 2013 in NJCDR-2 1/1/2017 and NJCDR-2 7/20/2018 eCDR formats [Exhibit145-150, 156-176] for the first time upon receiving email replies Exhibit196-204] to NJ Court Records Request managed by Rachelle Dippolito the current Deputy Court Administrator for Defendant City of Vineland, who was not employed there in 2010 nor 2013. Court Disposition records eCDR-2 No. W06142010001690; W06142010001691; W06142010001692 are (hereafter referred to as "2023 New Forged eCDR Arrest Warrant applications") [Exhibit 145-150, 156-176].

67.    The foregoing 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] that were discovered by Plaintiff on January 25, 2023, are on electronic forms approved by the administrative office of the Court in the year 2017 and identified by the NJCDR-2 (eCDR-2) format date 01/01/2017, which is a format created seven (7) years [Exhibit 137-144] from the date Defendant Wehling created the foregoing 2010 Forged Arrest Warrant applications [Exhibit 4-15] on NJCDR-2 -8/01/2005 format; and two years after the instant matter on appeal [A-005736-13T1] was dismissed by order filed August 19, 2015.  Rachel Dippolito the Vineland Deputy Court Administrator informed the plaintiff that the Vineland Municipal Court currently only has possession of the applications made in the NJCDR-2 1/1/2017 eCDR-2-format [Exhibit 145-150, 156-176]. Court Administrator Rachel Dippolito forwarded the full seven copies of the 2023 forged eCDR-2 arrest applications on which the current CCPO address 115 Vine Street Bridgeton NJ 08302 is redacted from six (6) of the seven (7) pages. The CCPO address in 2010

and 2013 was <u>43 Fayette St Bridgeton, NJ 08302</u> as found on the 2010 Forged CDR-2 Arrest

Warrant applications [Exhibit 4-15].

68.    **Refer to original complaint for signature**" is found on the 2023 New Forged

eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] in place of defendant Wehlings

eCDR2 Signature Acknowledgement & Officer Certification. Page 1 of 7 of the 2023 New Forged

eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] purport to be "ORIGINAL".

"**Refer to original complaint for signature**"  is found on the 2023 New Forged eCDR Arrest

Warrant applications [Exhibit 145-150, 156-176] in place of an appropriate judicial electronic

signature consistent with page 87 of the <u>Automated Trial Court Services Law Enforcement</u>

<u>Application: eCDR November 2020</u> [Exhibit 208-215] and <u>Attorney General Law Enforcement</u>

<u>Directive 2016-6 v3.0: Modification of Directive Establishing Interim Policies, Practices, and</u>

<u>Procedures to Implement Criminal Justice Reform</u> Pursuant to P.L. 2015, c. 31. [Exhibit177-265]

which would require an electronic signature "<u>Robert Becker Judicial Officer</u>" in the signature line

of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] if those

applications were verified by said Judicial Officer and "via telecommunications" would be notated

if the applications were telephonically approved [Exhibit 137-144] as notated by defendant

Wehling in 2010.[9]

69.    "First Appearance Date: 06/20/2013" is found twice on the 2023 New Forged

eCDR Arrest Warrant applications [Exhibit 145-150, 156-176]. Appearance time 01:30 PM" is

found twice on the 2023 New Forged eCDR Arrest Warrant applications. Appearance time 09:30

AM is found on the 2010 Forged Arrest Warrant Applications [Exhibit 4- 15]. Box 1) lists 2C:29-

1A and Box 2) list 2C:29-3B4  as "Original charges" on the 2010 Forged CDR 2-Arrest Warrant

---

[9] https://www.njcourts.gov/sites/default/files/attorneys/ecourts/training/ecdrpowerpoint.pdf

application ending in 1692 [Exhibit 6, 9, 12-13]. Box 1) lists N.J.S. 2C:29-3B(4) and Box 2) list §

511-10 Other acts prohibited as an "Original Charge" on the 2023 New Forged eCDR Arrest

Warrant application ending in 1692 [Exhibit 6, 9, 12]. The "Probable Cause Finding Box" and

"Judicial Verification Box" on the 2010 Forged Arrest Warrant Applications  [Exhibit 4- 15] are

blank on each document. There is no check mark on either application [Exhibit 4-15].

70.     The Probable Cause Finding Box on the 2023 New Forged eCDR Arrest Warrant

applications [Exhibit145-150, 156-176] have an electronic checkmark in the  "Yes" box. "The Bail

amount set at $1,503.00 on the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 216-

221, 227- 247], however, the $50,000.00 Bail amount typewritten by defendant Lynn Wehling on

the 2010 Forged Arrest Warrant Applications  [Exhibit 4-15] is still found at the top of each 2023

New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176]. The handwriting "Per

SCJ Judge Becker" and "Telephonic" as found on the 2010 Forged Arrest Warrant Applications

does not appear on the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150,

156-176].

71.     Prior to signing the certifications of the 2010 Forged arrest warrant applications

and writing Per SCJ R. Becker, the defendant Wehling marked an "X' on the "Signed" line and

the "If different from Judicial Officer" line. The defendant Wehling typed an excessive

**"$50,000.00** DOLLARS FULL CASH BLANKET BAIL SET BY JUDGE BECKER" into the

"By Certification or on oath" section of the 2010 Forged Arrest Warrant Applications [Exhibit 4-

15]. This $50,000.00 Full Cash Bail does not appear on the 2023 New Forged eCDR Arrest

Warrant applications Exhibit145-150, 156-176], as $1,503.00 is found in its place. The 2023 New

Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] contain (1) text fonts, (2)

text box widths, (3) text box formats, (4) modern technology LIVESCAN PCN# category, (5)

dates, and (6) times that are not found on the 2010 Forged Arrest Warrant Applications [Exhibit 4-15]. LIVESCAN PCN# category [Exhibit 137-144, 177-265] did not exist in 2010, nor is it found on the 2010 Forged Arrest Warrant applications [Exhibit 4-15]. The First (1st) page 1 of 7 for each of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] is designated as the "Original".

72.    **Refer to original complaint for signature** is also found on Page 4 of 7 of each of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 159, 146, 173]. "Commitment Page 4" of 2023 the New Forged eCDR Arrest Warrant applications No. W06142010001692 lists "Criminal Justice Reform as the "Commitment Reason". The last page (7) seven of seven (7) of the 2023 the New Forged eCDR-2 Arrest Warrant applications [Exhibit162, Pa169, Pa176] was made on an eCDR-2 format NJCDR-2 7/20/2018 and the Superior Clerks Office records [Exhibit 410] list the Superior Court Case # CUM-10-001011 Case Status as "ACTIVE" and states that G9SCRMP1 generated two entries stating: Case Files "ARCHIVED" and provides Archive ID numbers ARC2018000179950 and ARC2018000179951 with Entry dates on 08/15/2018, while Superior Clerks Office records [Exhibit 415] list Superior Court Case # CPM -13-001458 Case Status as "COMPLETE" with a 02/06/2020 entry date and Transaction ID CRM2020123419 Entered By SPTUser.

73.    On Jan. 1, 2017, the state shifted from a system that relies principally on setting monetary bail as a condition of release to a risk-based system that is more objective, and thus fairer to defendants because it is unrelated to their ability to pay monetary bail. The statute also set deadlines for the timely filing of an indictment and the disposition of criminal charges for incarcerated defendants. https://www.njcourts.gov/public/concerns/criminal-justice-reform

74.    The FTA Bail Information Box, Date Bail Set Box, Amount Bail Set Box, Bail Recog. Box, Attached, Released on Bail Box, R.O.R. Box, Committed Default Box, Place Committed Box, Date Referred to County Prosecutor Box, Prosecuting Attorney Information Box on page 2 of each of the 2010 Forged Arrest Warrant Applications  [Exhibit 4-15] are blank. The FTA Bail Information Box, Date Bail Set Box, Amount Bail Set Box, Bail Recog. Box, Attached, Released on Bail Box, R.O.R. Box, Committed Default Box, Place Committed Box, Date Referred to County Prosecutor Box, Prosecuting Attorney Information Box on page 2 of each of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 146, 148, 150] are blank.

75.    The Vineland defendants "Factual Background and Procedural History" [CAM-L-004550-13 01/26/2023 2:35:18 PM Pg 1 of 10 Trans ID: LCV2023371221] and the States Brief [Exhibit 57-59] filed in State v. Lynn A. Wehling both omit from their narratives the misconduct Exhibit 425, 610] of Steven O'Neil (of the CCPO) who subjected Plaintiff to an unreasonable secondary search of his person (genitals included) after Plaintiffs hands had been restrained by NJ State Police, O'Neil sexually assaulted Plaintiff [Exhibit 464], and subjected Plaintiff to further assault by pushing Plaintiff into a wooden banister on the back porch of the residence while Plaintiff hands were restrained behind his back and during transportation O'Neil intentionally tightened the hand restraints on the Plaintiffs wrist effecting blood circulation,  nervous system, causing soreness and numbness in the hands further constituting Deadly force. The restraints gave a burning sensation when removed.

76.    The plaintiff's motion for relief from judgment was brought under R. 4:50-1 (b)(c)(d)(e) and (f). The State Court confined argument under the context of New Evidence standards. Plaintiff provided as "Judicial Estoppel evidence" new to the State Courta copy of the States Brief [Exhibit 57-59], and New Evidence the 2023 New Forged eCDR Arrest Warrant

applications Exhibit145-150, 156-176] provided to him for the first time on January 25, 2023. These 2023 New Forged eCDR Arrest Warrant applications [Exhibit 216-221, 227-247] did not exist in 2010 [Exhibit 4- 15], or 2014. The 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] generated by defendant Lynn Wehling are distinct from the 2010 versions [Exhibit 4- 15] that defendant Wehling authored upon NJCDR 8/1/2005 eCDR formatted versions. Thus, the original NJCDR 8/1/2005 applications [Exhibit 4- Pa15] with the defendant Wehlings handwriting, wet signature, handwritten $50,000.00 cash bail statement and handwritten "PER SCJ R Becker Telephonic" are no longer within the Vineland Municipal Courts records Exhibit196], according to the Deputy Court Administrator.[10]

77.    The State Court failed to consider the false alterations that distinguish the sham 2010 Forged Arrest Warrant Applications [Exhibit 4- 15] from the sham 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] which also includes the current CCPO 115 Vine Street, Bridgeton NJ 08302 address, different fonts, form box sizes, and also references technology such as "LIVESCAN PCN#" that did not exist on the 2010 Forged Arrest Warrant Applications  [Exhibit 4- 15]. In addition to the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] evidence that did not exist in 2014, 2013, nor 2010.

78.    The 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] shakes the very foundation of the frivolous defense advanced by the defendant Wehling, that she had no involvement with the prosecution [Exhibit 481] of the plaintiff after the prosecutorial

---

[10]  "**The altering or falsification of such a record is at least prejudicial to and a fraud upon the state**. The "person" defrauded, within the meaning of forgery statutes, can be a state, county, or other governmental unit. 26 C.J. 905 State v. Weigel 194 N.J. Super. 451 (App. Div. 1984) Here, in this case, we have a complete factual dispute about what was signed, if anything was signed. The agreement proffered by . . . defendants here is **a forgery and a fraud**. We have direct testimony on that, that it wasn't signed by ... plaintiff ...Knight v. Vivint Solar Developer, LLC 465 N.J. Super. 416 (App. Div. 2020) [Exhibit 579, 659]

downgrade in October 27, 2010 and almost certainly alters the August 1st, 2014 State Courtdecision as to defendant Wehling and cannot be properly categorized as merely cumulative in negative manner as to the plaintiff because these 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] did not exist during District and State Court litigation in 2014 and demonstrate that the defendant Wehling generated these 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] after adjudication was completed by Judge North upon the original 2010 Forged Arrest Warrant Applications [Exhibit 4- 15]. Which demonstrates that Defendant Wehling's conduct is cumulative i.e. triggering the continuing violation doctrine.[11]

79.    In addition, Judge Kaspar's notations made on Page 2 of 7 [Exhibit 15] of the 2010 Forged Arrest Warrant application No. W06142010001690 [Exhibit 15] provides in the Miscellaneous, Information, Adjournments, Companion Complaints, Co-Defendants, Case Notes" section states "Subpoenaed Off [icer]", again demonstrating defendant Wehlings involvement with the Municipal case in 2012 and 2013 contrary to the statute of limitations defense advanced and adopted by the State Court[Exhibit 89].

80.    The State Court ultimately adopted a false statute of limitations defense narrative from Cumberland County Counsel which was and is contrary to court records and the criminal investigation [Exhibit 517-519] into the conduct of defendant Wehling. The State Court erred and abused its discretion by stating:

---

[11] In Wilson v. Wal-Mart Stores, this Court recognized the continuing violation doctrine in a LAD case. 158 N.J. 263, 272-74 (1999). We observed that "a significant number of courts recognize that the cumulative effect of a series of discriminatory or harassing events represents a single cause of action[.]" Id. at 273. The Court stated as a general rule that "[w]hen an individual is subject to a continual, cumulative pattern of tortuous conduct, the statute of limitations does not begin to run until the wrongful action ceases." Id. at 272; see also Ali v. Rutgers, 166 N.J. 280, 286 (2000) (reaffirming "existing jurisprudence" as articulated in Wilson). Licwinko v. Celgene Corp. Civil Action No. 20-00255 (D.N.J. Jul. 8, 2020)

"Plaintiff of course contends that the [11T Line 17 P. 27] information that he's received recently, and with [11T Line 18 P. 27] regard to these -- these 2010 criminal pleadings, [11T Line 19 P. 27] creates newly discovered evidence for which the Court [11T Line 20 P. 27] can base its decision to vacate. The Court finds that [11T Line 21 P. 27] really all of that information is cumulative. It's all [11T Line 22 P. 27] been raised before by the plaintiff. He alleges now [11T Line 23 P. 27] again forgeries. But you know, that -- that's come up [11T Line 24 P. 27] before. [11T Line 25 P. 27] And the fact of the matter is that the – ..[11T Line 1 P. 28] arguments of plaintiff do not present any -- any new [11T Line 2 P. 28] evidence after the Court's -- this Court's lengthy 3 review, and of course the fact that it's been heard. I [11T Line 4 P. 28] do rely to the extent that, you know, Judge Millenky in [11T Line 5 P. 28] 2014 on these two motions, on these two orders, entered [11T Line 6 P. 28] lengthy analysis of the facts, analysis of the law, and [11T Line 7 P. 28] dismissed it. And again, that was appealed, apparently [11T Line 8 P. 28] denied for reasons indicated by the plaintiff." So, I guess the ultimate contention as stated [11T Line 20 P. 29] by the plaintiff is that - - that the defendant Wehling [11T Line 21 P. 29] knew the arrest warrant application prepared by her was [11T Line 22 P. 29] not judicially issued. It was really a conclusory [11T Line 23 P. 29] statement without merit. I don't know the exact [11T Line 24 P. 29] details of that, but there's nothing to indicate that [11T Line 25 P. 29] there was anything inappropriate about that…[11T Line 1 P.30] charges against defendant Wehling were dismissed, [11T Line 2 P. 30] further showing that there's no fraud misrepresentation [11T Line 3 P. 30] or misconduct. Of course, that was the - - the criminal [11T Line 4 P. 30] prosecution that was initiated by plaintiff against [11T Line 5 P. 30] Wehling, but again dismissed. [11T Line 6 P. 30] And Court respects that plaintiff feels he [11T Line 7 P. 30] didn't get satisfaction and continues his efforts, [11T Line 8 P. 30] particularly with regard to Wehling. Wehling at all [11T Line 9 P. 30] times was county detective for Cumberland County, a [11T Line 10 P. 30] public employee whose entitled to immunity under 59:3- 11 8. [11T Line 12 P. 30] Further, because of the charges against [11T Line 13 P. 30] Wheling are that she forged the judge's name on an [11T Line 14 P. 30] arrest warrant, plaintiff was unable to establish that [11T Line 15 P. 30] her conduct was outside the scope of her employment. [11T Line 16 P. 30]The -- the issue is whether, you know, a judge issued [11T Line 17 P. 30] it or approved it. It certainly, particularly at the [11T Line 18 P. 30] time, was acceptable for the judge to authorize a law [11T Line 19 P. 30] enforcement officer to enter the name on -- on the [11T Line 20 P. 30] complaint. And I'm not certain whether that did or [11T Line 21 P. 30] didn't happen here, but the plaintiff has offered no [11T Line 22 P. 30] proof all this time." February 3, 2023, Transcripts

81.    The Plaintiff provided a falsified or Sham certification of disposition [Exhibit 222]

which he received in reply to NJ Court Records request from the Vineland Municipal Court in

January 2023 to the Trial Court. The falsified certification of disposition [Exhibit 151]

misrepresents that Plaintiff was originally charged with an unconstitutionally vague Vineland

Municipal Ordinance § 511-10[12] "Other acts prohibited". [Amended 1-23-2001 by Ord. No. 2001-1].

82.     Plaintiff argues that the ordinance is unconstitutionally vague and that the original 2010 Forged Arrest Warrant Applications  [Exhibit 6, 9, 12-13], Promis Gavel records of the Superior Court [Exhibit 22-29] and the Superior Court Clerk's Office record [Exhibit 410] prove that § 511-10 was not an "Original Charge" as currently displayed by the 2023 New Forged eCDR Arrest Warrant application [Exhibit 145-150, 156-176] ending in 1692.

83.     In addition, Plaintiff provided transcripts of the 6/20/13 proceedings before Judge North [ Exhibit 86-112], and the Court may observe that § 511-10 was not a charge before the Vineland Municipal Court on June 20th, 2013 [2T].

84.     In a 2021 Michigan case *Dorman v. Dorman*, Michael Dorman's attempt to deceive the court by introducing an old document using a new font is a cautionary tale to lawyers and clients alike. Macomba County Probate Judge Sandra Harrison denied admission of Michaels's proposed exhibit and ruled that the corporate resolution was drafted in Calibri font, which did not exist at the time Michael claimed he drafted it.

85.     Similarly, in this case, the 2023 New Forged eCDR Arrest Warrant applications Exhibit145-150, 156-176] did not exist in 2010 Exhibit 4-6], 2013 Exhibit 7-9], nor 2014 Exhibit 12-15]. The State Court abused its discretion as to this New evidence [Exhibit 145-150]  because it determined that these 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150] had already been adjudicated, which is not reasonable because State Court adjudication ended in

---

[12] § 511-10 Other acts prohibited. [Amended 1-23-2001 by Ord. No. 2001-1] Any act which offends the peace and good order of the City of Vineland is prohibited. Said act shall include (but not be limited to) fighting, threatening behavior and other act which causes alarm to the public order. https://ecode360.com/12949523

the year 2014 [Exhibit 134-164], the written opinions issued by the same State Courtin 2014 do

not the address 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176],

nor the Ordinance § 511-10 and the 2023 New Forged eCDR Arrest Warrant applications [Exhibit

145-150, 156-176] technology did not exist until the year 2014, thus there could have been no

adjudication by the State Courton these 2023 New Forged eCDR Arrest Warrant applications

[Exhibit 145-150] evidence because the Plaintiff did not discover them until January 25, 2023, and

the defendants concealed their generation.

86.     Further, the Trial Courts reliance on the administrative dismissal [Exhibit 55-56] in

State v. Wehling is misplaced as it was the fruit of a conflict of interest [Exhibit 41, 72, 494],

appearance of impropriety, prosecutorial abuse of discretion, evidence of retaliation [Exhibit 44],

discrimination [Exhibit 266-376], harassment, deprivation of equal protection under the law and

crime victim witness rights [Exhibit 40, 429, 5T, 10T].

87.     The eCDR-2 format of the 2023 New Forged eCDR Arrest Warrant applications

did not exist until 2017 Exhibit 145-150, 156-176] or after 2018 Exhibit 162, 169, 176].

88.     In response to the 2023 New Forged eCDR Arrest Warrant applications [Exhibit

145-150]  submitted as New Evidence the State Court abused its discretion and erred where it

stated:

"Right. And you make -- you make [11T Line 4 P. 12] an OPRA request currently in January
2023. [11T Line 5 P. 12] They respond to your OPRA request [11T Line 7 P.12] which they're
required to do under the law. And you 8 now assert that that's new evidence. These are all
documents that go [Line 11 P.12] back  But they're not new to the [11T Line 18 P. 12] criminal
prosecution. They're not new to the [11T Line 19 P. 12] Cumberland County Prosecutor's Office.
They're not new [11T Line 20 P. 12] to the Vineland City Municipal Line [11T Line 23 P. 12]
Court. They're not new to the Cape May County Superior [11T Line 24 P. 12] Court –- -- that
dismissed the charge [11T Line 2 P. 13] against Wehling. I understand. These are things that took
place, [11T Line 19 P. 16] it would have had to been, before to make it relevant [11T Line 20 P.
16] to your case. Let me stop. But all that was [11T Line 24 P. 16] litigated. If you didn't come up
with it, or it wasn't [11T Line 25 P. 16] established sir, I don't know -- I know there's a lot. [11T
Line 17 P. 16] 1 Years and years have been fought over these issues, [11T Line 2 P. 17] sir, in

Federal Court, in State Court, in County Court….The relief requested by the plaintiff that [11T Line 4 P.26] the references to newly discovered evidence does not [11T Line 5 P. 26] warrant vacating. This is not -- these are issues that [11T Line 6 P. 26] have come up before and I respect that -- that again, [11T Line 7 P. 26] there's been a recent OPRA request. And I believe [11T Line 8 P. 26] plaintiff thinks that now triggers a new -- well, [11T Line 9 P. 26] certainly triggers, you know, continued litigation over [11T Line 10 P. 26] the issues that have been really long included with [11T Line 11] prejudice…..In any event, with all this history, sir, [11T Line 4, P.7] it's impossible for me to necessarily comment on every [11T Line 5, P. 7] submission that you've made [11T Line 5 Pg. 14]

89.      The false alterations found on the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] contradict Judge Kaspar and Judge North's adjudicative findings [1T, 2T] as to the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] created in April 2010.

90.      Plaintiff submitted a copy of the Cumberland County Trial Court Administrator Letter [Exhibit 19-21] in support of his forgery allegations with respect to applications purported to have been telephonically requested.

THE COURT: Right. [11T Line 6 Pg. 14] THE PLAINTIFF: The arrest warrant [11T Line 7 Pg. 14] applications. [11T Line 8 Pg. 14] THE COURT: Right. [11T Line 9] THE PLAINTIFF: The originals were forged by [11T Line 10 defendant Wheling. The new versions that I've [11T Line 11 Pg. 14]   submitted -- [11T Line 12 Pg. 14]   THE COURT: Forged as how? 13 THE PLAINTIFF: As in she -- [11T Line 14 Pg. 14] THE COURT: So -- so Judge Becker didn't sign [11T Line 15 it? [11T Line 16 Pg. 14] THE PLAINTIFF: No. [11T Line 17 THE COURT: Okay. [11T Line 18 Pg. 14] THE PLAINTIFF: He didn't sign them. She [11T Line 19 Pg. 14] wrote his name on it. [11T Line 20 Pg. 14] THE COURT: All right. It was a telephone [11T Line 21 Pg. 14] warrant. I don't want to interrupt you. It was a [11T Line 22 telephone warrant. I don't know that that -- [11T Line 23 Pg. 14] February 3, 2023, Transcripts THE PLAINTIFF: It wasn't telephonic. I've submitted evidence from the Superior Court of Cumberland Trial Court administrator…. February 3, 2023, Transcripts [11T Lines 24-25 Pg. 14]

91.      The State Court indicated that it did not know the exact details as to the issuance of the defendant Wehlings 2010 Forged Arrest Warrant Applications [Exhibit 4-15] and that it was not certain whether a Judge [Robert P. Becker, Jr.] did issue or didn't issue the 2010 Forged Arrest Warrant Applications [Exhibit 4-15], after Plaintiff had submitted to the State Court transcripts [2T] of the Vineland Municipal Court Proceedings where Judge North held that the 2010 Forged

Arrest Warrant Applications [Exhibit 4- 15] prepared by Lynn A. Wehling lacked findings of probable cause and were not signed by a Judicial Officer.

92.    The State Court failed to review the transcripts of the Vineland Municipal proceedings.[13]

93.    The State Court having possession of the Vineland Transcripts [1T, 2T], the Cumberland County Trial Court Administrator Letter [Exhibit 19-21] and the States Brief [Exhibit 57-59] filed in the Supreme Court of New Jersey erred and abused its discretion again when it stated:

THE COURT: "So I guess the ultimate contention as stated [11T Line 20, P. 29] by the plaintiff is that -- that the defendant Wehling [11T Line 21, P.29] knew the arrest warrant application prepared by her was [11T Line 22, P. 29] not judicially issued. **It was really a conclusory** [11T Line 23, P. 29] **statement without merit**. **I don't know the exact** [11T Line 24, P. 29] **details of that**, but there's nothing to indicate that [11T Line 25, P. 29] there was anything inappropriate about that. "The -- the issue is whether, you know, a judge issued [11T Line 17, P. 30] it or approved it. It certainly, particularly at the [11T Line 18, P. 30] time, was acceptable for the judge to authorize a law [11T Line 19, P.30] enforcement officer to enter the name on -- on the [11T Line 20, P. 30] complaint. And I'm not certain whether that did or [11T Line 21, P. 30] didn't happen here, but **the plaintiff has offered no** [11T Line 22, P.30] **proof all this time**. THE PLAINTIFF: I provided transcripts, [11T Line 24, P.30] Judge. [11T Line 25, P.30  THE COURT: Got it, sir. I'm -- I'm [11T Line 1, P. 31] rendering my decision. Thanks. February 3, 2023, Transcripts. THE PLAINTIFF: It wasn't telephonic. I've [11T Line 24, P.14] submitted evidence from the Superior Court of [11T Line 25, P.14] Cumberland Trial Court administrator. [11T Line 1, P. 15] THE COURT: But a search warrant was issued [11T Line 2, P.15]. THE PLAINTIFF: Search warrant was issued for [11T Line 3, P.15] Scott McArthur (phonetic). [11T Line 4, P.15] THE COURT: To Mr. McArthur's house. [11T Line 5, P.15] THE PLAINTIFF: Yes. [11T Line 6, P. 15] THE COURT: You're in bed there. They raid [11T Line 7, P. 15] the house. [11T Line 8, P.15] THE PLAINTIFF: Yes. [11T Line 9, P. 15] THE COURT: You're charged. McArthur is [11T Line 10, P.15] charged. Obviously, it was lengthy and problematic. [11T Line 11, P.15] Ultimately the matter is sent to Vineland City [11T Line 12, P. 15] Municipal Court and dismissed by Judge North, right? [11T Line 13, P. 15] THE PLAINTIFF: Yes. And the problem with [11T Line 14, P.15] that is when you say that I was charged, the state says [11T Line 15, P.15 that I wasn't charged to the Supreme Court. The [11T Line 16, P. 15] documents themselves were not issued by a judge. February 3, 2023, Transcripts

---

[13] Citing <u>State v. Quintana</u>, 270 N.J. Super. 676 (App. Div. 1994) ("if the court does not by its own perceptions know all of the facts, then there must be a trial to adduce and adjudicate them. 84 N.J. at 121, 417 A.2d 533.").

94.    The Trial Courts search warrant reply to the fact that Judge Becker did not issue telephonic arrest warrants for the arrest and prosecution of the plaintiff was irrelevant, arbitrary, and capricious because the State Court had been provided with exculpatory direct evidence [Exhibit 19-21] from the Cumberland Superior Court Trial Court Administrator asserting that there was no search warrant issued for the Plaintiff and that it did not possess telephonic arrest warrant evidence.

95.    The same tactical maneuver was tried in the Vineland Municipal Court where Inez Acosta decided to disregard addressing the arrest warrant applications [Exhibit 4-15, 2T] and attempt to focus discussion on the search warrant authorizing the seizure of Scot McArthur, despite the "mere propinquity" rulings of this Court in State ex rel. D.B. Docket No. A-1273-10T4 (App. Div. Apr. 11, 2012), State v. Bivins 435 N.J. Super. 519 (App. Div. 2014), State v. Smith DOCKET NO. A-1795-16T3 (App. Div. Jan. 29, 2018), State v. Dolly 255 N.J. Super. 278 (App. Div. 1991) [Exhibit 633] and Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979). [Exhibit 523]

96.    Defendant Wehling did not have factual or legal basis to assert a defense under Statute of Limitations, nor prosecutorial immunity [Exhibit 538, 549] because the Defendant Wehling is not an attorney and she was subpoenaed Exhibit15, 517-519] and present at the June 20, 2013, hearing before Judge North (Vineland Municipal Court). Inez Acosta and/or the Vineland Municipal Court subpoenaed [Exhibit 15, 517-519] defendant Wehling to appear at its 2012-2013 hearings.

97.    Knowing that she had appeared at hearings in the Vineland Municipal Court in 2013, the defendant Wehling still advanced via County Counsel a frivolous statute of limitations

argument to the State Court purporting to have "no involvement" [Exhibit 15, 517-519] with the case after October 27, 2010.

98.     These disorderly persons hearings took place after the Statute of Limitations set forth at N.J. Stat. § 2C:1-6 [Exhibit 419].

99.     The Vineland Municipal Judge left subpoena notations [Exhibit 15, 517-519] as to defendant Wehling on the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] in possession of the Vineland Municipal Court in the year 2013.

100.     The statute of limitations argument in defense of Lynn Wehling was presented to the State Court by Theodore Baker (Cumberland County Counsel) and therefore constitutes a fraud upon court because Mr. Baker was an officer of the Court and knew or should have known that his client had acted in the capacity of a complaining witness [Exhibit 4- 15] and had appeared for the hearing held before Judge Thomas North on June 20, 2013 [Exhibit 15, 517-519], which was dismissed in his favor.

101.     It must be noted that during this hearing the State failed and did not make an attempt to provide evidence of telephonic issuance of the 2010 Forged Arrest Warrant Applications [Exhibit 4- 15] prepared by defendant Lynn A. Wehling. The State also failed to produce evidence that Superior Court Judge Becker issued these documents. The State did not appeal Judge North's findings as to the 2010 forged arrest warrant applications [Exhibit 4-15] and decision.

102.     In all Courts, the State has always relied on Plaintiff's "mere propinquity" to Scott McArthur, to justify its discriminatory and retaliatory actions. The State Court made a recital of the "Response In Opposition to Plaintiffs' Motion For Amendment, To Correct; Reopen, and For Relief From Judgment" filed by the Vineland defendants into the record citing the defendants

"Factual Background and Procedural History" found on page 1 of the Brief[14] which corresponds with 11T Line 21, P. 20 of the February, 3, 2023 Transcripts and State v. Carter, 91 N.J. 86, 121 (1982) (Pg. 5) in context of "New Trials" also found in transcripts at 11T Line 12, P. 27 in the February 3, 2023, Transcripts.

103.    This was an abuse of discretion and Error because the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 216-221, 227-247] did Not exist in the year <u>2014</u> and could not have been reviewed by the State Court(Camden) during the 2014 litigation, nor the Cape May County State Court during the crime victim proceedings in the State v. Wehling and neither the 2013 Vineland Municipal Court (Judge North) proceedings as postulated by the State Court(Camden) during the motion for relief proceedings on Feb 3, 2023.

104.    Plaintiff contends that Jennifer Webb McRae, defendant Wehling and the State were defendants in the State actions and were Parties to the preceding Municipal action against the Plaintiff [1T, 2T, Pa4-Pa39, Pa410-Pa414,] and are identical to the parties here. Defendant Wehling was present on June 20, 2013, hearing sat next to defendant Inez Acosta. Plaintiff argues that these parties are identical because defendant Wehling was in privity with Jennifer Webb McRae, Johnathan M. Flynn, and Inez Acosta and for purposes of Criminal and Municipal actions.

105.    The Brief filed by the Vineland defendant's 2023 <u>Factual Background</u> And <u>Procedural History</u>[15] is a misrepresentation and directly contradicts the States Brief [Exhibit 57-59] "Procedural history" and "Statement of Facts" filed in the Supreme Court of New Jersey and the State's Brief [Exhibit 57-59] directly contradicts the Inez Acosta's (the State's) representations in the Vineland Municipal Court memorialized in Transcripts - June 20, 2013 [2T].

---

[14] [CAM-L-004550-13 01/26/2023 2:35:18 PM Pg 1 of 10 Trans ID: LCV2023371221]
[15] [CAM-L-004550-13 01/26/2023 2:35:18 PM Pg 1 of 10 Trans ID: LCV2023371221]

106.    However, the States Brief Exhibit 57-59] narrative that purports that no charges were filed against the Plaintiff, corresponds with the States defense before the State Courton behalf of the Criminal Division Manager in the Cumberland Vicinage who denied having possession of the 2010 Forged Arrest Warrant Applications. Plaintiff also submitted to the State Court Evidence of Judicial Estoppel [Exhibit 57-59] copy of the "State of New Jersey Brief In Opposition" addressed by the State Court[11T]. State v. Lynn A. Wehling Docket Number A-004435-13T3 [Exhibit 52-54] filed in the Supreme Court of New Jersey for this Court to compare with the representations made by attorneys in (1) State v. Cornell Dixon [1T, 2T] and (2) State v. Lynn A. Wehling Exhibit57-59] and the instant matter.

107.    Plaintiff maintains "*extraordinary and exceptional circumstances"* arise from the attorneys representing the State in related matters conduct in making inconsistent and false statements in the Criminal, Municipal and Law Divisions of the Courts of New Jersey, including the Supreme Court of New Jersey in violation of RULE RPC 4:1 – (Truthfulness in Statements to Others) and RULE RPC 3:4 – (Fairness to Opposing Party and Counsel). The States' representation made in the Supreme Court of New Jersey [Exhibit 57-59] is clearly inconsistent with its earlier position made in the Vineland Municipal Court [Exhibit 58-112] and the Trial Court.

108.    The State admitted in its Brief [Exhibit 57-59] filed with the Supreme Court of New Jersey that movant was a bystander, that ultimately, no charges were filed against Petitioner [Exhibit 52-54], that Petitioner was not the target of the search warrant, and the State has also admitted that the Superior Court Cumberland Criminal Division denied having possession of Wehlings 2010 Forged Arrest Warrant Applications [Exhibit 4-15] that she falsely purported to be have been telephonically issued by SCJ Judge Becker.

109.    These positions have created the perception that either the Vineland Municipal Court, or the State Court(Camden), or the Criminal Division (Cumberland, Cape May), or the Supreme Court of New Jersey was misled; and the State's attorneys (including the Cumberland defendants and Vineland defendants) asserted inconsistent positions in all of these Courts which gave them more of an unfair advantage, imposed an unfair advantage, and will impose an unfair detriment on Plaintiff if not estopped. The matter was already unfair based on the fact that the plaintiff was an unexperienced impoverished Pro Se litigant, lacking counsel, which made the board entirely uneven.

110.    Hence, the State's Brief  [Exhibit 52-54] and 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] were unobtainable by the exercise of due diligence for use during Appellate Division proceedings because defendants created the false alterations in retaliation against plaintiff and concealed the generation of 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] and the State Brief [Exhibit 57-59] was not filed in the Supreme Court of New Jersey until after the movant was denied relief by the Appellate Division and because defendants McRae, Wehling and Inez Acosta were actively taking steps to cover up for the defendant Wehling's unconstitutional and criminal conduct.

111.    The 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, Pa156-176] were unobtainable by the exercise of due diligence because the defendant Wehling and the Vineland defendants were withholding, concealing, and suppressing their discovery until January 25, 2023 [Exhibit 124-133]. The State's Brief [Exhibit 57-59] shows a contradiction to the States representations made in municipal court [2T] and State Court[Exhibit 67] and District Court proceedings in which the defendants contended that the plaintiff was charged and prosecuted; while knowing the 2010 Forged Arrest Warrant Applications  [Exhibit 4-15] lacked

probable cause, were not signed, nor issued by a Judicial Officer in violation of N.J.S. 2C:30-2 [Exhibit 496-499], N.J.S. 2C:30-6, N.J. Admin. Code § 4A:2-2.3 [Exhibit 459], N.J. Const. Art. I and III, the First, Fourth, Thirteenth [Exhibit 459], and Fourteenth Amendments of the United States Constitution.

112.    Even the newly discovered 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] are not electronically signed nor verified by a Judicial Officer [Exhibit 4-36, 57-59] again in violation of N.J. Admin. Code § 4A:2-2.3 Exhibit 459], N.J. Stat. § 2C:30-2 [Exhibit 425], N.J. Const. Art. I and III, the Fourth, Thirteenth and Fourteenth Amendments of the United States Constitution. The States Brief [ Exhibit 57-59] was not available during the litigation in this matter below, as its Brief was not prepared until September 9, 2014, much after the NJ Appellate Division had issued orders denying the Plaintiffs' motions [M-009468-13, M-000145-14, M-000494-14, M-001920-14, M-002744-14, M-001920-14, M-003488-14, M-002953-14, M-003715-14].

113.    Plaintiff contends that the States Brief [ Exhibit 57-59] and the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] is new or additional information that was not available at the time of the first application which warrants that this Court should take another look at the merits of Plaintiff's arguments.

114.    The February 23, 2023, order did not satisfy the second precondition of certification of finality under Rule 4:42-2 because it failed to address the judicial estoppel [Exhibit 57-59] and fraud upon the court claims set forth in the motion.  See Janicky v. Point Bay Fuel, Inc., 396 N.J.Super. 545, 549-52, 935 A.2d 803 (App.Div. 2007) (addressing cases improperly certified as final under Rule 4:42-2 where determination did not constitute a complete adjudication of a separate claim).

115.    The 2014 [Exhibit 63, 71, 94] and 2023 [Exhibit 3] State Court orders are void because they violated Plaintiff's due process, meaningful access to the courts, right to sue, right of access to the courts, right to be free from retaliation, right to be free from harassment, right to equal protection under the law and right to be free from oppression by the state. Because Plaintiff was deprived of the opportunity to be heard with respect to the 2014 orders Exhibit 63, Pa 71, Pa 94] in violation of due process, equal protection, and cannon 3(a)(6) —these circumstances compel a finding that Plaintiff was deprived of due process.

116.    The State Court failed to provide oral argument opportunity for Plaintiff to present his objections to the statute of limitations defenses as to his civil rights claims of malicious prosecution claims Exhibit [88-89, 567, 708] which like his common law malicious prosecution claims did not start to run until June 20, 2013 and the grant of prosecutorial immunity [Exhibit 538, Pa549] where the law does not afford such a privilege to any official acting without probable cause, without personal jurisdiction [Exhibit 88] and engaging in retaliation, discrimination and conflicts of interest.

**Identity Of Parties Exists**

117.    Plaintiff contends that defendant Wehling and state actors Jennifer Webb McRae, Johnathan M. Flynn and Inez Acosta were in privity under either of these theories of collateral estoppel Exhibit 68], res judicata, claim preclusion and entire controversy doctrine.

118.    Plaintiff contends that defendant McRae and the Cumberland County Prosecutors Office, was in privity with the Cape May County Prosecutors Office in State v. Lynn A. Wehling [Exhibit 41- 44].

119.    Jennifer Webb McRae clearly controlled the prior litigation before the Superior Court [Exhibit 38-39] (Cumberland Vicinage) and Vineland Municipal Court proceedings before

42

Vineland Judge Kaspar and Judge North which was dismissed in Plaintiff's favor and that defendant McRae's interests were adequately represented by the Cumberland County Prosecutors Office, Johnathan M. Flynn, the Cape May County Prosecutors Office i.e., the State.

120.    Plaintiff contends these facts satisfy the identity of parties element of res judicata the Trial Courts (Camden, Cape May, and Cumberland) overlooked or inappropriately applied in favor of the defendant Wehling, and state actors Jennifer Webb McRae, Inez Acosta and Johnathan M. Flynn who were the loosing parties in the Vineland Municipal Court [2T].

121.    Plaintiff contends that the parties in the State Criminal and Municipal actions against the Plaintiff are identical to the parties here. In the State Criminal and Municipal actions against the Plaintiff, the defendant Lynn Wehling acted as a complaining witness [Exhibit 4-15] similar to Lynne Kalina, a Deputy Prosecuting Attorney for King County, Washington, who commenced criminal proceedings against Rodney Fletcher. See Kalina v. Fletcher 522 U.S. 118 (1997) Exhibit538]

122.     Plaintiff contends that the defendant Wehling and state actors are identical because the Cumberland County Prosecutors Office a state agency or state office was in privity with the Vineland Municipal Prosecutor Inez Acosta for purposes of the Criminal and Municipal actions against the Plaintiff reliant on the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] replete with false statements.

**1.    Identity of Issues**

123.    Plaintiff seeks a finding of res judicata only on those findings considered by the Vineland Municipal Court on June 20, 2013 [1T, 2T] and the Cumberland Vicinage Criminal Division on December 15, 2015 [Exhibit 60, 10T] to conclude that the defendant Lynn A Wehling violated his rights guaranteed by the Constitution of the United States and Article I of the New

Jersey State Constitution by fabricating evidence and falsifying statements on the 2010 Forged Arrest Warrant Applications  [Exhibit 4-15] and failing to have a neutral, detached and impartial judge, clerk or court administrator determine whether the conditions in the 2010 Forged Arrest Warrant Applications  [Exhibit [4-15] were satisfied.

124.    Accordingly, Plaintiff seeks res judicata only on those issues that are identical. Plaintiff contends that res judicata applies to preclude prelitigation of the fact that the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] lacked findings of probable cause and were not signed by a Judicial Officer as affirmed by Judge North in the Vineland Municipal action [Exhibit 86-112] giving rise to this civil action and related crime victim witness actions.

125.    Plaintiffs maintain that the existence of the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] possessing Defendant Wehling's handwriting, wet signature and the existence of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] which lack Defendant Wehling's handwriting and wet signature found on the original documents [Exhibit 4-15] renders the State's (Cape May County Prosecutors Office) insufficient evidence report "false", " a sham" and or "frivolous".

126.    Thus, the State Courts erred  and abused its discretion in relying on the fruits of a conflict of interest and fraud to suggest that there was no evidence of fraud as a result of the State administratively dismissing State v. Wehling, on the basis of insufficient evidence and failing to consider the State lacked jurisdiction to dismiss the 18 U.S. Code § 1581 - Peonage; obstructing enforcement  Complaint upon which Judge Kaspar found probable cause because it is Federal.

127.    Plaintiff argues that the Inez Acosta (the State) has already litigated these issues without probable cause, without personal jurisdiction, without judicial verification and lost, and

Counsels should have been barred from relitigating them here under the doctrine of collateral estoppel and the entire controversy doctrine.

128.    The Trial Courts failure to bar the defendants' arguments which constitute re-litigation [Exhibit 67] was error and an abuse of discretion that resulted in a miscarriage of justice. In addition, both the entire controversy and collateral estoppel doctrines supported dismissal of the defendants' motions to dismiss.

129.    The issue as to whether or not the 2010 forged arrest warrant applications Exhibit 4-15] being defective and not signed by a Judicial Officer has been addressed by Judge North (Vineland Municipal Court)  whom concluded that on No. 2010-1690 [1T Line 23, P. 20] on the CDR-2 form, Mr. Mujaddid is correct, no probable cause finding is noted as far as [1T Line 24, P.20] probable cause to issue the complaint. And the same is [1T Line 25, P.20] true of the other two complaints." The probable cause determination is not noted. [1T Line 22-23, P.21]…It just, it doesn't seem to me that [Exhibit 106 Line 25, P. 21] the complaints have the issuance that's demanded by [1T Lines 1-2, P. 22] the court rule, and I do note the matters are very, very old. The CDR form says what it says, and it demands, I think, adherence. There's no notation on the front of the probable cause has been found [1T 110 Lines 12-15, P.25] In the end, there is a court rule that says this Court can conform the signature but I'm uncomfortable doing so three years down the road. It seems to me that even if I did that would I then be saying that the summons is now issued... [1T Lines 19-23, P. 25] "In the end, I make my decision based on not only the lack of conformance of that signature in so many years… I am concerned about the lack of adherence to what I'll call the formalities of CDR-2 which is the finding of probable cause."

130.    The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved

in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015).

131.    Plaintiff's allegations about the 2010 forged arrest warrant applications – clearly arise from the same operative facts on which the Cumberland Vicinage Superior Court and Vineland Municipal Court action were based. Any State Opposition should have been brought in the municipal action it initiated or on appeal to the municipal decision.

132.    The Plaintiff contends the trial court's discussion on State v. Lynn A. Wehling [Exhibit 40-49, 55-62, 415, 461-486, 488, 638-639, 494] did not adequately take into consideration the hardship and the inconvenience to the Plaintiff.  Plaintiff contends that the defendant Wehling and state actors has made unfair prejudicial use of the 2023 New Forged eCDR Arrest Warrant applications [Exhibit 145-150, 156-176] by labelling[16] them as cumulative or as documents subjected to prior adjudication, while ignoring the damage to an individual who is subject to a continual, cumulative pattern of tortious conduct.

133.    In addition, the States use of its own abuse of discretion in administratively dismissing State v. Wehling [Exhibit 42-44, 55-59] to suggest that Plaintiff cannot establish forgery or has not provided evidence of forgery is prejudicial because 1) the 2010 Forged Arrest Warrant applications [Exhibit 4-15] were subjected to examination and adjudicated [2T] upon in the

---

[16] Thus, "evidence [that] would shake the very foundation of the State's case and almost certainly alter the earlier jury verdict" could not be categorized as "merely cumulative." Ibid. (internal quotation marks and citation omitted). "The power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence." Id. at 191–92, 850 A.2d 440 (citation omitted). State v. Nash 212 N.J. 518 (N.J. 2013) In Shepherd, the Court recognized that the continuing violation doctrine is appropriate in the context of "a continual, cumulative pattern of tortious conduct," id. at 18, 803 A.2d 611 (citing Wilson, supra), as opposed to the occurrence of "discrete discriminatory acts." Licwinko v. Celgene Corp. Civil Action No. 20-00255 (D.N.J. Jul. 8, 2020)

Vineland Municipal Court which found that the documents lacked probable cause findings and were not signed by a Judicial Officer and 2) the Cumberland Vicinage Trial Court Administrator Letter [Exhibit19-21] and the CCPO Reply to OPRA both constitute Court Record and Public Record [Exhibit 30-36] evidence that the original 2010 Forged Arrest Warrant Applications [Exhibit 4- 15] were not issued by the Cumberland Superior Court [Exhibit 17-29] and were not issued telephonically [Exhibit 30-36].

134.    It is further prejudicial for the defendants to rely on the administrative dismissal in State v. Wehling which derived from Jennifer Webb McRae's engagement of the Conflict of Interest [Exhibit 40-49, 55-62, 415, 461-486, 488, 438, 638-639, 494] and the abuse of discretion on part of the Cape May County Prosecutors Office. The concealed order [Exhibit 41] prepared by defendant Webb McRae in October 2013 required the plaintiff to travel from Burlington County to Cape May County, and it caused the plaintiff to lose time from work.

135.    Defendant Webb McRae and Mr. Baker (Cumberland County Counsel) represented to the State Court that Webb McRae had no involvement with the Plaintiffs case since the alleged October 2010 downgrade [Exhibit 89, 463-486] and omitted that McRae had caused the plaintiff to have to travel to Cape May County when she knew that he resided in Burlington County [Exhibit 40]. Defendant McRae's conflict of interest conduct here is consistent with the conflict-of-interest allegations made against her by William T. Johnson [Exhibit 377-387], who served as chief of detectives for three years until his termination in September 2013, filed a New Jersey Conscientious Employee Protection Act lawsuit <u>Johnson vs County Of Cumberland ATL L-005702-14</u> in Gloucester County Superior Court naming Cumberland County, the prosecutor's office and Prosecutor Jennifer Webb-McRae all as defendants. Johnson complained [Exhibit 377-387] in the lawsuit, filed Sept. 9, that various investigations conducted by defendant McRae's

office violated the New Jersey Attorney General's [Exhibit 61-62] rules, regulations and guidelines and that internal affairs policies and procedures involved conflicts of interest [Exhibit 40-44].

136.    In addition, Johnson alleged that the prosecutor's office violated the civil rights of a member of the community who was allegedly incarcerated without sufficient evidence. According to the lawsuit, Johnson objected to matters that "reflected poorly upon the prosecutor's office" such as the prosecutor's alleged "inappropriate personal involvement" in matters where she "personally involved herself in the investigatory and disciplinary process of employees." The Cumberland County Prosecutors Office Defendants settled with Mr. Johnson after the matter was scheduled for trial. Plaintiff contends the State Court erred and abused its discretion where it stated:

> The matter was sent to Cape May [11T Line 25 P. 19] County, and it was disposed of there. [11T Line 1 P.] THE PLAINTIFF: It shouldn't have been sent [11T Line 2 P. 20] to Cape May County because I don't live in Cape May [11T Line 3 P. 20] County nor Cumberland County. [11T Line 4 P. 20]  THE COURT: That's not -- that's not your [11T Line 10 P. 20] decision to make, sir, as to what jurisdiction. [11T Line 11 P. 20] THE PLAINTIFF: That was an abuse of [11T Line12 P. 20] discretion, and it went against my crime victim rights, [11T Line 13 P. 20] Your Honor. [11T Line 14] THE COURT: Sir, there's nothing about the [11T Line 15 P. 20] matter being transferred to Cape May County that I view [11T Line 16 P. 20] as being unfair. I think it was appropriate to do so."… I know a lot went into the prosecution of Lynn Wehling. [11T Line 20, P.6]

137.    Plaintiff places the foundation of his position as to this issue regarding State v. Lynn Wehling on the appellate divisions findings in GOMEZ and contends as the State did, that the Victim's Rights Amendment of our State Constitution and the Crime Victim's Bill of Rights required consideration of those types of costs and inconveniences to Plaintiff and that his concerns should be or should have been taken into account in deciding whether venue should be transferred 100 miles away from his residence in Burlington County.[17] In addition, Plaintiff named Jennifer

---

[17] "The State contends the trial court's order in this case did not adequately take into consideration the hardship and the inconvenience to the victim. The order requires the victim to travel from Hudson County to Tenafly in Bergen County, and it will cause the victim to lose time from work

Webb-McRae, defendant Wehling and the Cumberland County Prosecutors Office as defendants in civil actions on June 18, 2013, months before defendant McRae drafted the Oct 02, 2013, Order Exhibit 41] to Transfer.  In fact, this meritorious claim is of constitutional dimension, First Amendment and N.J. Const. Art. I Retaliation, Right to Privacy, Bodily Integrity, Due Process, Equal Protection, N.J. Const. Art. I, P. 22 and statutory magnitude N.J.S.A. § 52:4B-36)] and N.J.S.A. § 52:4B-36.2)].

138.    The State withheld the 2010 Forged Arrest Warrant Applications [Exhibit 4- 15] during the criminal and municipal prosecution [1T, 2T] and suppressed or misrepresented the same evidence [Exhibit 463]  in State v. Lynn Wehling. The State never turned over Pages 4 of 7, 5 of 7, 6 of 7 and 7 of 7 Exhibit 50-53]  as to the 2010 Forged Arrest Warrant Applications [Exhibit 4-15] 8-1-2005 format to plaintiff in violation of Judge Kaspar's Holup Order [1T Lines 1-10 Pg. 26] and Brady Rights. The fact that defendant McRae was named as a defendant [Exhibit 72] in the State Civil case along with the defendant Wehling called for her disqualification before she drafted and filed the order of Transfer [Exhibit 41] to Cape May County, which was concealed from Plaintiff.  The Special DAG (Dara Paley), was responsible for notifying the witnesses, and victims, that supersession occurred and supplying the name of the person to be contacted regarding this matter. Paley did not serve Plaintiff with a copy.

---

or school. **We agree with the State that the Victim's Rights Amendment of our State Constitution and the Crime Victim's Bill of Rights required consideration of those types of costs and inconveniences to the victim.**" STATE of New Jersey, v. Roskilde GOMEZ, Defendant–Respondent. Decided: **April 05, 2013.** See also State v. Timmendequas , 161 N.J. 515, 556, 737 A .2d 55 (1999) (recognizing that victims' concerns should be taken into account in deciding whether venue should be transferred), cert. denied , 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed .2d 89 (2001). State ex rel. M.P., 450 N.J. Super. 539, 163 A.3d 952 (App. Div. 2017) MESSANO, P.J.A.D. Exhibit 735, 743, 751]

139.     Defendant McRae a potential criminal trial witness assumed the role of Special DAG when she drafted the order to Transfer and did not give notice to the Plaintiff contrary to the NJ OAG Policy 13.4 Supersession 13.4.3 'Special Deputy Attorneys General' [Exhibit 61-62]. These are actions Jennifer Webb McRae took against the Plaintiff for the benefit of defendant Wehling while his civil action was pending in the Law Division [Exhibit 143] and criminal action against Wehling was pending in the Superior Court of New Jersey.

140.     Plaintiff contends that the State actors (Jennifer McRae, Mary P. Murphy and Division of Criminal Justice) applied N.J.S. 52:17B-106 as a sword in an unconstitutional manner that violated plaintiffs rights under U.S. Const. Amend. I (Retaliation), XIII (Badges), XIV (Due Process, Equal Protection), 18 U.S.C. § 3771, N.J. Const. Art. I and  N.J.S.A. § 52:4B-36 by authorizing transfer to a venue 100 miles away from his residence without giving him opportunity to oppose such a transfer.[18] Aside to that the same County (Cape May) was investigating the defendant Lynn A. Wehlings claims against the Cumberland County Prosecutors Office. The investigation provided that the non-Black members of the Cumberland County Task Force frequently used the racial slur "Nigger". The Task Force use of the term "Nigger" was justified by the Cape May County Counsel in his findings [Exhibits 479-486, 301, 305, 307].

141.     There was no compliance with the policy of the New Jersey Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to 4B-49. Both the State and Trial Courts were aware that the Plaintiff resided in Burlington County [Exhibit 40, 429] and having no regard for the appearance of

---

[18] Of course, all other Rules of Professional Conduct governing conflicts of interest must be observed. See, e.g., RPC 1.7 (stating general conflict of interest rule); RPC 1.8 (addressing conflict of interest with current clients and special circumstances); RPC 1.9 (addressing conflicts of interest in respect of former clients); RPC 1.10 (governing imputation of conflicts of interest); RPC 1.12 (addressing judicial and quasi-judicial conflicts); In re State Grand Jury Investigation, 200 N.J. 481, 496 n.5 (N.J. 2009)

impropriety, conflicts of interest or their duty to be neutral and detached each ignored crime victim legislation and case law on the subject matter and showed only concern about conveniences for defendant Wehling.

142.    County Counsel Theodore E. Baker submitted no evidence to support defendant Wehling's statute of limitations defense to plaintiff malicious prosecution claims, which was frivolous and constituted a fraud upon the Court, which is contradicted by defendants Wehlings testimony [Exhibit 517-519] given to David Hogan of the Cape May County Prosecutors Office [Exhibit 517] and the well-known fact that Wehling was present for the June 20, 2013, hearing [2T, 517-519] held in the Vineland Municipal Court on Subpoena to Testify [Exhibit 15], [R. 1:9-1, R. 7:7-8, N.J.S. § 22A:1-4], witnessed by Inez Acosta and Judge Thomas S. North. There is a manifest lack of inherently credible evidence to support the Trial Courts 2014 [3T, 4T, 6T, 7T 8T, 9T] findings and its 2023 findings [11T]. Manifest injustice resulted again when the State Court engaged in an obvious overlooking or under-valuation of the invalid 2010 Forged Arrest Warrant Applications [Exhibit 4-15], the Vineland Municipal Court Transcripts [1T, 2T], Trial Court Administrator letter [Exhibit 19-Pa21], States Brief [Exhibit 57-59] and the 2023 New forged eCDR-2 arrest warrant applications [Exhibit 145-150, 56-176] all amounting to crucial evidence.

143.    Non-Mutual Offensive Collateral Estoppel/Claim Preclusion[19] Is Invoked With Respect To The Jury Verdict and Settlement Agreement in Ronald Farabella v. City Of Vineland

---

[19] "When used to bar a defendant from asserting a defense previously litigated and lost against a different plaintiff, it is referred to as offensive collateral estoppel. Ibid. In this case, we are confronted with an application of offensive collateral estoppel to bar defendant from denying that its drug was unsafe and that it was negligent in marketing DES for use by pregnant women. Kortenhaus v. Eli Lilly & Co. 228 N.J. Super. 162 (App. Div. 1988) On appeal in Watermark Senior Living Communities, Inc. v. Morrison Management Specialists, Inc., No. 17-2129 (6th Cir. 2018) the Sixth Circuit appellate court was asked to decide, for the very first time, if under Michigan law "a judgment that is set aside upon settlement can be used for collateral-estoppel purposes in future litigation?" The appellate court said that it could. The court contrasted that case

CUM-L-000076-10, the Settlement Agreement in Johnson v. County Of Cumberland ATL L-005702-14 and the Judgment in In The Matter Of Gamaliel Cruz, City Of Vineland Police Department Superior Court Of New Jersey Appellate Division Docket No. A-0829-18T2

144.    Plaintiff relies on the Farabella [Exhibit 80-98] and Johnson [Exhibit 100-117] Whistleblower cases to bar the City of Vineland defendants, Cumberland County and Cumberland County Prosecutors Office defendants from asserting claims that they acted within the scope of their employment or that Plaintiff cannot establish that defendants did not act outside the scope of their employment. Farabella's11 [ Exhibit 80-98] complaint accused the Cumberland County Task Force of engaging in criminal activities, which is further supplemented by Judge Kaspars probable cause findings in State v. Lynn Wehling, State v. Gamaliel Cruz and In The Matter Of Gamaliel Cruz [Exhibit 129-145]. In Farabella a Jury entered a verdict in his favor against the City of Vineland. Plaintiff contends that these issues had already been resolved in Farabella [Exhibit 80-98], and Cruz [Exhibit 129-145].

145.    Plaintiff has alleged retaliation in violation of the First Amendment by the defendants based on actions taken against him after Judge Kaspars probable cause findings. Both Farabella and Johnson were retaliation cases. The Cumberland County Prosecutors Office, Cumberland County and City of Vineland defendants Settled those matters. Plaintiff contends he may rely on those settlements. Farabella's civil lawsuit against the defendant city of Vineland in 2010 alleged numerous police officers involvement in illegal drug activities. Johnson's lawsuit [Exhibit 100-117] stated that various investigations conducted by the prosecutor's office violated the New Jersey Attorney General's rules, regulations and guidelines and that internal affairs

_____

with another where "we found that the settlement agreement was a judicial record because it had been filed with and enforced by the district court." Id. (citing Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339 (3d Cir. 1986)

policies and procedures involved conflicts of interest and that the prosecutor's office violated the civil rights of a member of the community who was incarcerated allegedly without sufficient evidence. Johnson's lawsuit also alleged that the defendants Cumberland County prosecutor's office allowed civilian personnel to conduct investigations and perform duties associated with the Professional Standards Unit. According to the lawsuit, Johnson objected to matters that "reflected poorly upon the prosecutor's office" such as the prosecutor's alleged "inappropriate personal involvement" in matters where she "personally involved herself in the investigatory and disciplinary process of employees which is corroborated in State v. Lynn A. Wehling. In addition, Plaintiff invokes the appellate division decision in In The Matter Of Gamaliel Cruz, City Of Vineland Police Department Superior Court Of New Jersey Appellate Division Docket No. A-0829-18T2 [Exhibit 133-145]: " The opinion adds: "In addition, false testimony by a police detective has the potential to severely undermine public confidence in law enforcement, warranting his removal from office."

## COUNT I

### RETALIATION
**ACTIONABLE PURSUANT TO 42 U.S. CODE § 1983 N.J.S. 10:6-2 AND NJLAD AGAINST DEFENDANT LYNN A. WEHLING**

**DEPRIVATION OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS; RIGHT TO PETITION THE GOVERNMENT AND TO BE FREE FROM RETALIATORY PROSECUTION FOR EXERCISING THAT RIGHT; AND EXERCISING THE 42 U.S.C. 1981 RIGHT TO SUE, BE PARTY, GIVE EVIDENCE, AND TO THE FULL AND EQUAL BENEFIT OF ALL LAWS AND PROCEEDINGS FOR THE SECURITY OF PERSON AND PROPERTY AS IS ENJOYED BY WHITE CITIZENS**

**DEPRIVATION OF NJ CONST. ART. I RIGHT OF ACCESS TO THE COURTS AND TO BE FREE FROM RETALIATORY PROSECUTION FOR EXERCISING THAT RIGHT; DEPRIVATION OF N.J.S.A. § 52:4B-36 RIGHT TO BE FREE FROM INTIMIDATION, HARASSMENT OR ABUSE BY ANY PERSON INCLUDING THE DEFENDANT WEHLING OR ANY OTHER PERSON ACTING IN SUPPORT OF OR ON BEHALF OF**

**THE DEFENDANT WEHLING, DUE TO THE INVOLVEMENT OF THE PLAINTIFF IN THE CRIMINAL JUSTICE PROCESS ACTIONABLE PURSUANT TO N.J.S. 10:6-2**

146.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

147.    Plaintiff contends that the word "retaliation" in this complaint sufficiently implies a causal link between his citizen complaints, civil complaints and the electronic arrest warrant applications printed, and filed in his municipal court record years after adjudication of the matter in plaintiffs favor.

148.    Plaintiff engaged in protected speech when he filed Citizen Complaints with the Vineland Municipal Court; Plaintiff engaged in protected speech when he filed Civil Complaints in the Federal and State Courts; Plaintiff contends that the defendant Wehling, State of New Jersey, defendant Cumberland County and City of Vineland's retaliatory conduct adversely affected that speech;

149.    Plaintiff contends that defendant Wehling's generation of electronic arrest warrant applications was unlawful retaliation designed to silence his right to seek redress, a First Amendment right, N.J. Const. Art. I right and NJLAD right.

150.    Plaintiff alleges that the defendant Wehling Falsified/Fabricated Electronic Court Disposition Records/Electronic Arrest Warrant Applications in retaliation for plaintiffs resort to legal process in a violation of the First Amendment guarantee of access to the courts and right to be Free From Retaliatory Prosecution for exercising that right and its counterpart under N.J. Const. Art. I.

151.    Plaintiff alleges that the defendant Wehling Falsified/Fabricated Electronic Court Disposition Records/Electronic Arrest Warrant Applications in retaliation for plaintiffs resort to

legal process in a violation of the N.J.S.A. § 52:4B-36 right to be free from intimidation, harassment or abuse by any person including the defendant Wehling or any other person acting in support of or on behalf of the defendant Wehling, due to the involvement of the plaintiff in the criminal justice system.

152. Plaintiff alleges that defendant Wehling, Cumberland County, City of Vineland and State of New Jersey officials retaliated against him by fabricating/Falsifying electronic court disposition records/electronic arrest warrant applications in response to his civil rights suit against them and his Citizen Complaints filed against Defendant Wehling.

153. Plaintiff contends that the defendants lack of probable cause was established in the Vineland municipal court proceeding presided over by Judge Thomas North. Plaintiff has attached the transcripts of this proceeding.

154. Plaintiff contends that the defendants lack of probable cause was established in the Superior Court of New Jersy Law Division presided over by Judge Robert G. Millenky. Plaintiff has attached a copy of the Judge Millenkys opinion where he found the defendants lacked probable cause as to Plaintiff.

155. Because Defendants' discriminatory conduct is ongoing, continual, cumulative pattern of tortuous conduct, declaratory relief and injunctive relief are appropriate remedies. Further, as a direct result of Defendant 'Wehling's actions, Plaintiffs is suffering irreparable harm, including lost educational opportunities. Therefore, speedy and immediate relief is appropriate.

156. Plaintiffs is entitled to declaratory and injunctive relief because he has no adequate remedy at law since he cannot appeal the State Court decisions and cannot seek to have any of the State Judges disqualified. Plaintiff contends he is entitled to reasonable attorneys' fees and costs incurred in bringing this action.

157.    Plaintiff contends that the defendants conduct was an infringement of his first amendment right of access to the courts[20] and the same right under N.J. Const. Art. I.

## CLAIMS RESERVED

Plaintiff herein reserves all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing Plaintiff an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

Plaintiff herein invokes equitable tolling in order to preserve any and all claims recently discovered by Plaintiff, and the conduct complained is cumulative (continuous).

## PRAYER FOR RELIEF

The Plaintiffs pray for relief from this Honorable Court as follows:

I. For Count One, Awarding Plaintiffs the maximum relief allowed by statute.

II. Awarding Plaintiffs compensatory damages to be determined, and punitive damages for $25,000,000.

III. Awarding Plaintiffs $1,000,000 per civil rights violation and $5,000,000 each occurrence; compensatory damages, treble damages; and injunctive relief.

_____

El Aemer El Mujaddid, Pro Se

---

[20] Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment. See Smith v. Mensinger,293 F.3d 641, 653 (3d Cir. 2002) ("We have . . . held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts."); Allah,229 F.3d at 225 Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)