[ECF Nos. 17, 18, 40]

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| **EL AEMER EL MUJADDID,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**LYNN A. WEHLING,**<br><br>    **Defendant.** | **Civil No. 25-738 (ESK)(EAP)** |

## <u>OMNIBUS OPINION</u>

This matter comes before the Court on three motions: (1) Plaintiff's Motion to Disqualify Counsel, *see* ECF No. 18 (Pl.'s Disqualification Mot.); (2) Plaintiff's Motion to Strike, *see* ECF No. 40 (Pl.'s Mot. to Strike); and (3) Defendant Lynn A. Wehling's Cross-Motion to Vacate the Clerk's Entry of Default, s*ee* ECF No. 17 (Def.'s Mot.).[1]  The Court has considered the parties' submissions[2] and decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1.  For the following reasons, Plaintiff's Motion to Disqualify

---

[1]   The Court notes that Defendant's consolidated briefing also opposes Plaintiff's Motion for Default Judgment, ECF No. 14, and requests an extension of time to answer or otherwise respond to the complaint and moves to dismiss Plaintiff's complaint.  *See* Def.'s Mot.  On November 1, 2025, the Honorable Edward S. Kiel administratively terminated Plaintiff's motion for default judgment pending resolution of Defendant's cross-motion and Plaintiff's motion to disqualify counsel.  *See* ECF No. 26 (Text Order).  As to Defendant's request for additional time to respond to the amended complaint, given that Defendant already filed a motion to dismiss in response, her request for an extension is denied as moot.  As to the pending motion to dismiss, on December 2, 2025, the Honorable Edward S. Kiel, United States District Court Judge, stayed that portion of the motion until resolution of the aspect of the motion seeking to vacate the entry of default.  *See* ECF No. 54 (Text Order).

[2]    Plaintiff filed a Supplemental Submission in support of his Motion to Disqualify Counsel, s*ee* ECF No. 39 (Pl.'s Supp.); Defendant Wehling filed opposition to Plaintiff's Disqualification Motion, *see* ECF No. 52 (Def.'s Opp. to Pl.'s Disqualification Mot.); and Plaintiff replied, *see* ECF No. 53 (Pl.'s Reply).  Plaintiff's Motion to Strike is unopposed.  Plaintiff opposes Defendant's Motion to Vacate.  *See* ECF No. 21 (Pl.'s Opp.).

counsel is **DENIED**; Plaintiff's Motion to Strike is **DENIED**; and Defendant's Cross-Motion to Vacate the Clerk's Entry of Default is **GRANTED**.

## FACTUAL BACKGROUND

*Pro se* Plaintiff El Mujaddid is a prolific filer in this District. Nearly all of his suits relate to the alleged wrongs he suffered in 2010 when he was subjected to certain criminal proceedings in Cumberland County, New Jersey. Because his litigation history is relevant to the present motions, the Court summarizes Plaintiff's prior lawsuits and the present action before proceeding with its analysis.

Plaintiff alleges that the present action "arises from the preparation of three (3) invalid . . . arrest warrant applications and the subsequent discovery of fabricated electronic arrest warrants." ECF No. 8 (Am. Compl.) at 1, *see also id.* ¶¶ 7-8. According to the Amended Complaint, Defendant Lynn A. Wehling was employed as a detective with the Cumberland County Prosecutor's Office when she allegedly committed a variety of constitutional violations arising from Plaintiff's arrest and subsequent criminal proceedings in 2010. *Id.* ¶ 2. Defendant Wehling allegedly falsified warrants, "unlawfully accessed and embedded Plaintiff's Social Security number" into these documents, and "misappropriate[ed]" his identity. *Id.* at 1. Plaintiff also alleges that Defendant Wehling "recreated" the false warrant applications in January 2023. *Id.* ¶ 74. And while Plaintiff's record was ultimately expunged in 2024, "Plaintiff's name remains misassociated [sic]" with a different indicted individual in New Jersey public records, such that "[t]he ongoing publication of this misinformation . . . causes ongoing reputational injury, emotional distress, and public confusion" for which Plaintiff seeks monetary relief. *Id.* at 1-2; *see also id.* ¶ 83. Together, Plaintiff alleges nineteen causes of action.[3]

---

[3] Plaintiff alleges the following causes of action: "Deprivation of Equal Benefits of All Laws and Proceedings and Like Punishment," in violation of 42 U.S.C. § 1981 (Count One), Am.

This case, however, is not the first in which Plaintiff has made these allegations. Following this alleged wrongdoing in 2010, Plaintiff brought suits in both state and federal court related to his arrest and the subsequent criminal proceedings against him that repeated many of the same allegations made here. *See El Aemer El Mujaddid v. City of Vineland,* Docket No. CAM-L-4550-13 (Superior Court of New Jersey, Law Division, Camden County) (the "State Action"); *see also Mujaddid v. Wehling*, No. 12-7750, 2016 WL 310742, at *6 (D.N.J. Jan. 25, 2016), *aff'd,* 663 F. App'x 115 (3d Cir. 2016) (the "Federal Action"); *see also* Am. Compl. ¶¶ 20, 26, 56. On August 1, 2014, the New Jersey Superior Court dismissed the State Action entirely. *See* Def.'s Mot. at 14, (citing ECF No. 17-2, Exs. A (the State Court Opinion) & C (the State Court Order)); *see also El Aemer El Mujaddid v. City of Vineland,* A-1669-22 (N.J. App. Div. July 3, 2024) (affirming lower court's decision to deny Plaintiff's motion to vacate orders that dismissed the case in 2014). On January 25, 2016, the federal court dismissed Plaintiff's Federal Action with prejudice. *Mujaddid*

Compl. ¶¶ 90-102; "Malicious Abuse of Process," in violation of 42 U.S.C. § 1983 (Count Two), *id.* ¶¶ 103-09, arising from Defendant Wehling's actions in 2010 and later in 2024; First Amendment retaliation, in violation of 42 U.S.C. § 1983 (Count Three), *id.* ¶¶ 110-16; deprivation of procedural and substantive due process rights, in violation of 42 U.S.C. § 1983 (Count Four), *id.* ¶¶ 117-24; "Malicious Prosecution Under the Fourth and Fourteenth Amendments," (Count Five), *id.* ¶¶ 125-32; "Fraud upon the Court," in violation of 42 U.S.C. § 1983 (Count Six), *id.* ¶¶ 133-44; "Unauthorized Use of Social Security Number," a substantive due process violation under 42 U.S.C. § 1983 (Count Seven), *id.* ¶¶ 145-51; "Violation of Constitutional Rights Arising from Obstruction of Crime Victim Status and Misclassification of Federal Criminal Complaints," in violation of 42 U.S.C. § 1983 (Count Eight), *id.* ¶¶ 152-57; racial discrimination in violation of Title VI of the Civil Rights Act of 1964 (Count Nine), *id.* ¶¶ 158-68; "Discrimination Based on Perceived Disability," in violation of 42 U.S.C. § 12101, the Americans with Disability Act (Count Ten), *id.* ¶¶ 169-77; "Violation of the Human Trafficking Acts," citing 18 U.S.C. § 1595 and N.J.S.A. 2C:13-8 (Count Eleven), *id.* ¶¶ 178-86; "Civil RICO Violations Under 18 U.S.C. § 1962(c) and (d) and N.J.S.A. 2C:41-1 *et seq.* (Count Twelve), *id.* ¶¶ 187-96; "Injunctive Relief for Ongoing Constitutional Violations," in violation of 42 U.S.C. § 1983 (Count Thirteen), *id.* ¶¶ 197-204; "Injunctive Relief for Racial Discrimination and Unequal Treatment," in violation of 42 U.S.C. § 1981 (Count Fourteen), *id.* ¶¶ 205-13; "Intentional Infliction of Emotional Distress (IIED)" (Count Fifteen), *id.* ¶¶ 214-24; "Defamation and Libel" (Count Sixteen), *id.* ¶¶ 225-34; "Common Law Fraud" (Count Seventeen), *id.* ¶¶ 235-43; "Violation of the New Jersey Law Against Discrimination (NJLAD)," *id.* ¶¶ 244-52; and "Violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.* (Count Nineteen), *id.* ¶¶ 253-64.

*v. Wehling*, 2016 WL 310742, at *6.

## PROCEDURAL HISTORY

Despite these dismissals, Plaintiff returns to federal court with the present litigation. On January 25, 2025, Plaintiff filed the current lawsuit against Defendant Lynn A. Wehling. *See* ECF No. 1 (Compl.). On May 10, 2025, Plaintiff amended his complaint. *See* ECF No. 8 (Am. Compl.). On May 27, 2025, Plaintiff moved for an extension of time to serve the Amended Complaint, *see* ECF No. 10, which the Court granted on May 29, 2025, *see* ECF No. 11 (Order). On June 5, 2025, Plaintiff filed an executed summons for Defendant, reflecting that Defendant's response to the Amended Complaint was due on June 20, 2025. *See* ECF No. 12.

Defendant failed to file her response timely. On June 21, 2025, Plaintiff moved for clerk's entry of a default against Defendant. *See* ECF No. 13. On June 23, 2025, the Clerk entered default against Defendant. *See generally* Dkt.

On July 1, 2025, Defendant cross-moved to set aside the Clerk's entry of default, in addition to other relief. *See* ECF No. 17 (Def.'s Mot.). On July 6, 2025, Plaintiff filed opposition to Defendant's Motion. *See* ECF No. 21 (Pl.'s Opp. to Def.'s Mot.).

Plaintiff thereafter filed his Disqualification Motion, ECF No. 18; Motion to Strike, ECF No. 40; and more than twenty other documents, including new motions, letters, and "supplemental notices," many of which have since been either stricken or administratively terminated.[4] On November 10, 2025, Defendant Wehling requested additional time to oppose the Disqualification Motion, ECF No. 30, which Plaintiff opposed, ECF No. 32. On November 12, 2025, the Court

---

[4] Plaintiff filed several additional documents regarding his motion to disqualify counsel. *See* ECF Nos. 36, 39, 41, 42, 45, 46, 47, 48, 49, 50. On November 24, 2025, Judge Kiel struck Plaintiff's filings at ECF Nos. 45, 47, 48, 49, and 50. *See* ECF No. 51 (Text Order).

4

granted Defendant's extension request. ECF No. 31.[5] On November 13, 2025, Plaintiff filed a "Supplemental Submission" to his Motion to Disqualify Counsel. ECF No. 39 (Pl.'s Supp.) at 1. On November 24, 2025, Defendant filed her opposition to Plaintiff's Motion to Disqualify Counsel, ECF No. 52, and Plaintiff filed a reply, ECF No. 53.

Plaintiff's Motion to Strike remains unopposed as of the date of this Opinion. *See* Dkt. These motions are now ripe for disposition.

## DISCUSSION

### A.    Plaintiff's Motion to Disqualify Counsel

On July 2, 2025, Plaintiff moved to disqualify the New Jersey Office of the Attorney General ("NJOAG") from representing Defendant Wehling because (1) its representation of Ms. Wehling violates the Rules of Professional Conduct as an alleged "conflict of interest," *id.* at 1-2; (2) the NJOAG's representation violates the ethical duties set forth in various Executive Orders issued by the New Jersey Governor, *id.* at 2-3; and (3) N.J.S.A. 59:10A-2 "prohibits the State from defending employees accused of 'criminal conduct, or actual fraud, actual malice or willful misconduct' [as] outside the scope of employment," and that is what Plaintiff has accused Defendant Wehling of in the present litigation, *id.* at 3.[6] Plaintiff also argues that the NJOAG cannot represent Ms. Wehling because she is not a state employee, based on "evidence . . . recently

---

[5]   On November 12, 2025, Plaintiff objected to the Court's Order granting the extension, ECF No. 35, and moved to "vacate and reassign [the] case." *See* ECF No. 37. On November 20, 2025, Judge Kiel denied that motion. *See* ECF No. 44.

[6]   The Court need not and does not consider Plaintiff's additional arguments as they are irrelevant to the present motion. Specifically, Plaintiff asserts Defendant has taken "contradictory positions regarding whether [he] was charged or convicted" and should be estopped from "relitigating" these claims here. *See id.* at 3 (stating that "[j]udicial estoppel bars a party from taking a legal position inconsistent with one successfully asserted in prior proceedings[,]" without additional argument, and that "[c]ollateral estoppel and res judicata bar relitigation of factual issues and claims previously adjudicated," without additional argument). However, the Court does not find that Defendant is engaging in any such "relitigation," and even if the Court had so found, this is not relevant to the Court's analysis concerning whether the NJOAG should be disqualified.

obtained by Plaintiff[]"and case law.  Pl.'s Supp. at 1 (citing *Kaminskas v. Off. of the Att'y Gen.*, 236 N.J. 415 (2019) and *Monmouth Cnty. Prosecutor's Off. v. Off. of the Att'y Gen.*, 480 N.J. Super. 33 (App. Div. 2024)).[7]

In opposition, Defendant Wehling argues that Plaintiff's motion fails for four reasons: "(1) he has not presented a conflict of interest under the applicable rules of professional conduct; (2) he does not have standing to challenge the [NJOAG]'s decision to represent a state employee; (3) the cases upon which [Plaintiff] relies do not support his arguments at all; and (4) his characterization of Defendant Wehling's conduct is not controlling or dispositive as to the issue of representation."  Def.'s Opp. to Disqualification Mot. at 2 (footnote omitted).

In reply, Plaintiff sets forth several arguments, only some of which are relevant to a motion to disqualify counsel.[8]  As they pertain to the present motion, Plaintiff argues that (1) Defendant made "false statements" in its opposition that further support Plaintiff's disqualification motion

---

[7]  Plaintiff's new "evidence" consists of a representation letter between the NJOAG and Defendant Wehling dated November 7, 2025, Pl.'s Supp., Ex. B, and alleged "billing logs" obtained by Plaintiff, *id.*, Ex. A.  According to Plaintiff, the NJOAG's filings made prior to November 7, 2025, are void for allegedly preceding the date on the representation letter, *id.* at 3-5, and the logs "provide[] incontrovertible proof that" Ms. Wehling is a county, not state, employee, *id.* at 2-4.  However, a purported representation letter is not dispositive of whether an attorney-client relationship exists, and any alleged internal billing logs are irrelevant to determining an employee's status for purposes of indemnification.  Accordingly, the Court does not consider this purported evidence.

[8]  Plaintiff's Reply presents entirely new arguments supporting disqualification.  *See* ECF No. 53 (Pl.'s Reply) at 8-9 (asserting that the NJOAG failed to comply with certain "prerequisites" and cannot represent Defendant Wehling), 11-12 (asserting that Ms. Wehling was a complaining witness such that she is subject to suit).  These arguments are procedurally improper and thus will not be considered by the Court.  *See Milan v. New Jersey Transit Rail Operations, Inc.*, No. 18-13735, 2025 WL 842313, at *4, n. 4 (D.N.J. Mar. 18, 2025) ("However, 'a party cannot raise issues for the first time in a reply brief.'") (quoting *Stern v. Halligan*, 158 F.3d 729, 731 n. 3 (3d Cir. 1998))).  Plaintiff also presents various estoppel arguments alleging Defendant seeks to "relitigate" facts underlying this case that are irrelevant to his Motion and thus will not be considered by the Court.  *See* Pl.'s Reply at 1-6; *see also id.* at 10-11 (asserting the NJOAG's inability to represent county employees like Ms. Wehling has already been litigated and decided).  Finally, Plaintiff also asserts that neither issue nor claim preclusion bar his claims here, but this is also irrelevant to his Motion to Disqualify counsel.  *See id.* at 12, 14-15.

because they demonstrate the NJOAG's failure to demonstrate candor to the tribunal, *see* Pl.'s Reply at 1, 4 ("NJOAG's continued reliance on the fiction of a 'search warrant against Dixon' in its internal communications . . . demonstrates a profound disregard for factual accuracy and a pattern of asserting claims without evidentiary basis . . . and further underscores NJOAG's lack of candor to the tribunal"), 12-13, 14; (2) Plaintiff has standing to challenge the NJOAG's decision to represent Ms. Wehling, *see id.* at 6-8, and that decision is improper because the "NJOAG cannot deny the existence of malice or conduct outside the scope of employment" based on previous judicial "findings," *see id.* at 5; and (3) because Ms. Wehling is a county, not a state, employee, she cannot be represented by the NJOAG, *see id.* at 9-11.  The Court addresses each argument in turn.

1. <u>Legal Standard</u>

A "'district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it.'" *Marchisotto v. Malik*, No. 20-20426, 2024 WL 1929504, at *2 (D.N.J. May 2, 2024) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)).  The conduct of attorneys admitted to practice before the United States District Court for the District of New Jersey is governed by the Rules of Professional Conduct ("RPC") as revised by the New Jersey Supreme Court.  *See* L. Civ. R. 103.1(a).  The moving party must show "'disqualification is warranted, either because a [Rule of Professional Conduct] was violated or because sufficient doubt exists as to the propriety of further representation.'" *Marchisotto*, 2024 WL 1929504, at *2 (quoting *Shaikh v. Germadnig*, No. 22-2053, 2022 WL 16716116, at *2 (D.N.J. Nov. 4, 2022) (further citations omitted)).

The "party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 246

7

(D.N.J. 1998). "The motion must be supported by facts that must be closely scrutinized 'to prevent unjust results.'" *Gillespie v. Newark Bd. of Educ.*, No. 21-18990, 2024 WL 2354502, at *4 (D.N.J. May 23, 2024) (quoting *Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)); *see also Carreno v. City of Newark*, 834 F. Supp. 2d 217, 224 (D.N.J. 2011). However, "[e]ven where a violation is shown . . . disqualification is not automatic, for '[e]ven when an ethical conflict exists (or is assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy.'" *Marchisotto*, 2024 WL 1929504, at *2 (quoting *In re Boy Scouts of Am.*, 35 F.4th 149, 159 (3d Cir. 2022)).

"Courts are especially reluctant to impose this drastic remedy where, as here, a party seeks to disqualify the Attorney General's Office from representing the state defendants pursuant to its statutory obligation under the New Jersey Tort Claims Act to 'provide for the defense' of actions brought against current or former state employees 'on account of . . . act[s] or omission[s] in the scope of [their] employment.'" *Id.* (quoting N.J.S.A. 59:10A-1); *see also Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001) (finding "courts disfavor such motions and grant them only when absolutely necessary") (further quotations omitted).

  2.  <u>Plaintiff Fails to Show An RPC Violation Warranting Possible Disqualification</u>

Plaintiff argues that "[t]he NJOAG's continued representation of Defendant Wehling raises serious concerns" under the RPC. *See* Pl.'s Disqualification Mot. at 1. According to Plaintiff, (1) there is an actual conflict of interest violative of RPC 1.7 because the NJOAG cannot "ethically represent an individual accused of violating the public's trust"; (2) "[s]tate-employed attorneys must avoid any representation that might create the appearance of impropriety or misuse of public resources"; and (3) the NJOAG cannot represent Defendant Wehling because its "representatives have repeatedly made materially misleading statements" in this Court that violate RPC 3.3

governing candor toward the tribunal.[9] *Id.* at 1-2.

In opposition, Defendant asserts that Plaintiff "has provided no basis or evidence that suggests the [NJOAG] has ever represented him" to show any conflict of interest under RPC 1.7. Def.'s Opp. at 6. In reply, Plaintiff argues that the NJOAG made "misrepresentations" in its opposition brief that violate RPC 3.3 governing candor to the tribunal and further support disqualification. Pl.'s Reply at 1, 4, 12-13, 14.

Here, the Court finds that Plaintiff fails to meet his burden of presenting an actual conflict of interest that could warrant disqualification under any cited rule.

First, Plaintiff fails to show any violation of RPC 1.7. Rule 1.7 states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Under that rule, a concurrent conflict of interest exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Here, Plaintiff does not present any facts showing even the potential for a conflict of interest. Nothing before the Court suggests that the NJOAG ever represented—or could have represented—Plaintiff in a prior proceeding.

Second, Plaintiff fails to show any violation of RPC 1.9. Rule 1.9(a) states that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."

---

[9] The Court notes briefly that Plaintiff also argues the NJOAG must be disqualified for allegedly violating ethical duties set forth in certain of the New Jersey Governor's Executive Orders. *Id.* at 2-3. However, Plaintiff fails to provide any legal support demonstrating that, even if such violations occurred—which the Court does not find—that this is a proper basis for disqualification. Accordingly, this argument fails.

"Applying RPC 1.9 requires an assessment of whether [Plaintiff] is a former client of the [NJOAG], whether the current representation of [Defendant] is in the same or a substantially related matter, whether the representation is materially adverse to [Plaintiff], and if so, whether consent was given to proceed with the litigation after full disclosure." *Rohm & Haas Co.*, 187 F. Supp. 2d at 228. Plaintiff does not provide any facts from which the Court could conduct this analysis; indeed, Plaintiff offers no factual support that the NJOAG ever represented or could have represented him. The mere fact that the NJOAG has previously been involved in prior litigation on Ms. Wehling's behalf is irrelevant to the analysis.

Third, the Court finds Plaintiff fails to show that the NJOAG violates RPC 1.11(d). RPC 1.11 governs successive government and private employment. Under that rule, Plaintiff argues that "[s]tate-employed attorneys must avoid any representation that might create the appearance of impropriety or misuse of public resources to protect state actors from accountability." That principle, however, is not governed by RPC 1.11(d).[10] To the extent Plaintiff argues that the

---

[10]   Rule 1.11(d) states:

> (d)      Except as law may otherwise expressly permit, a lawyer serving as a government lawyer or public officer or employee of the government:
>
> (1)      shall be subject to RPC 1.9(c)(2) in respect of information relating to a private party acquired by the lawyer while in private practice or nongovernmental employment.
>
> (2)      shall not participate in a matter (i) in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, or (ii) for which the lawyer had substantial responsibility while in private practice or nongovernmental employment, or (iii) with respect to which the interests of the appropriate government agency are materially adverse to the interests of a private party represented by the lawyer while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter or unless the

10

NJOAG should be disqualified "to avoid any representation that might create the appearance of impropriety" under any rule of professional conduct, the Court also rejects that argument. Pl.'s Disqualification Mot. at 2. Although Plaintiff asserts the NJOAG cannot "ethically" represent Defendant Wehling because she is accused of misconduct, "it is not an ethics violation to represent a client accused of even serious misconduct." *Marchisotto*, 2024 WL 1929504, at *4. Further, "[w]hile the doctrine of appearance of impropriety once served as a basis for disqualification under RPC 1.7, the appearance of impropriety was removed from the New Jersey Rules of Professional Conduct in 2004." *Johnson v. Gloucester Cnty. Improvement Auth.*, Civ. No. 16-8422, 2019 WL 13277445, at *6 (D.N.J. Mar. 26, 2019) (internal citation omitted). And the Court is unpersuaded that any such impropriety exists here, as set forth more fully below.

Fourth, Plaintiff fails to show that the NJOAG's representation violates RPC 3.3, and even if he had, the Court is unpersuaded that such a violation would warrant disqualification. Rule 3.3(a) governs an attorney's obligation of candor to the tribunal.[11] Plaintiff argues the NJOAG

---

private party gives its informed consent, confirmed in writing, and

> (3)    shall not negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially or for which the lawyer has substantial responsibility, except that a lawyer serving as a law clerk shall be subject to RPC 1.12(c).

RPC 1.11(d).

[11]  RPC 3.3 states:

> (a)    A lawyer shall not knowingly:

> (1)    make a false statement of material fact or law to a tribunal;

> (2)    fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting an illegal, criminal or

should be disqualified because it "repeatedly made materially misleading statements in multiple judicial forums" regarding Plaintiff's prior 2010 arrest. Pl.'s Disqualification Mot. at 2. Plaintiff further alleges in his Reply that the NJOAG continues to make false statements in its opposition briefing in contravention of RPC 3.3. *See* Pl.'s Reply at 1, 4, 12-13, 14. Yet again, Plaintiff fails to support this bare allegation with sufficient facts, and even if he had, Plaintiff makes no showing that disqualification is warranted for such a violation. *See Gillespie*, 2024 WL 2354502, at *5 ("Even assuming violations of RPC 3.1 or 3.3, Plaintiff has failed to identify any instance where an attorney has been disqualified based on any such violation. Typically, consequences for these violations come in the form of sanctions.").

For these reasons, the Court finds that Plaintiff has failed to show any violation of New Jersey Rules of Professional Conduct that could warrant the NJOAG's disqualification.

3.    Plaintiff Fails to Substantiate Any Other Basis for Disqualification

a.    Defendant Demonstrates She Is a State Employee for Purposes of Indemnification, and Plaintiff's Cited Cases Do Not Warrant Another Conclusion

Plaintiff argues that the NJOAG must be disqualified because Ms. Wehling is a county

---

fraudulent act by the client;

(3)    fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel;

(4)    offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures; or

(5)    fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law.

12

employee, not a state employee.  In support of his position, Plaintiff cites two cases: *Kaminskas v. Office of the Attorney General*, 236 N.J. 415 (2019) and *Monmouth County Prosecutor's Office v. Office of the Attorney General.*, 480 N.J. Super. 33 (App. Div. 2024).  *See* Pl.'s Supp. at 1-3; *see also* Pl.'s Reply at 9-11.  In opposition, Defendant argues that Plaintiff's citations are misplaced and that Ms. Wehling is a state employee under these circumstances.  *See* Def.'s Opp. at 5.

The Court agrees with Defendant.  "The New Jersey Supreme Court has ruled definitively that when county prosecutors act in their law enforcement or investigatory capacity, 'they act as agents and officers of the State, qualifying as State employees under N.J.S.A. 59:1-3 for the purpose of determining vicarious liability under the [Tort Claims Act].'"  *Estate of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 268-69 (D.N.J. 2021) (citing *Wright v. State*, 169 N.J. 422, 451-52 (2001)).[12]

Here, it is apparent from the face of the Amended Complaint that Plaintiff alleges Defendant Wehling is a former county prosecutor who acted in an investigatory capacity during the events giving rise to the present lawsuit.  *See generally* Am. Compl.  Plaintiff's citations to *Kaminskas* and *Monmouth County* do not support his argument but rather bolster the seminal finding in *Wright*.  *Compare Wright*, 169 N.J. at 451-52 (holding that the State is vicariously liable for actions taken by county prosecutors in the performance of their law enforcement duties) *with Kaminskas*, 236 N.J. at 426-28 (affirming that the county, not the NJOAG, was responsible for defending and indemnifying local police officers for alleged misconduct, but not disturbing the holding of *Wright* as to county prosecutors) and *Monmouth Cnty.*, 480 N.J. Super. at 44 (citing

---

[12]  "The OAG's duty to defend arises solely from the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3."  *Monmouth Cnty. Prosecutor's Off.*, 480 N.J. Super. at 40 (citing *Chasin v. Montclair State Univ.*, 159 N.J. 418, 425 (1999)).  Because "[n]either party has identified any other governing statute, common law or contractual obligation to defend," the Court will analyze the applicable TCA provisions.  *Id.*

13

*Wright* for the proposition that "[w]hen prosecutors act in their law enforcement capacity, 'they act as agents of the State,'" but holding that the Office of the Attorney General was not required to defend the Monmouth County Prosecutor's Office under the Tort Claims Act "[b]ecause the underlying complaint [did] not seek monetary damages for tortious conduct").

b.    The NJOAG Is Not Prohibited from Representing Defendant Wehling

Plaintiff argues that N.J.S.A. 59:10A-2 "prohibits" the State from representing Defendant Wehling because she is accused of misconduct. Pl.'s Disqualification Mot. at 3. Defendant opposes and argues that the NJOAG is statutorily required to represent Ms. Wehling under these circumstances, and that Plaintiff lacks standing to challenge the NJOAG's ultimate decision to represent Ms. Wehling. *Id.* at 6-7. In reply, Plaintiff argues that he has standing to challenge the NJOAG's decision by citing to Federal Rule of Civil Procedure 11, certain cases, and his "taxpayer standing," *see* Pl.'s Reply at 6-8, and he further argues that because Ms. Wehling's misconduct was "judicially determine[ed]" in earlier proceedings, the NJOAG is judicially estopped from taking a contrary position here, *see id.* at 4.

First, the Court agrees that Plaintiff lacks standing to challenge the Attorney General's decision to represent Wehling. Indeed, "[t]he TCA delegates to the Attorney General the authority to determine whether the State will indemnify a public official." *In re Camden Police Cases*, Nos. 11-1315, 10-4757, 2011 WL 3651318, at *5 (D.N.J. Aug. 18, 2011) (citing N.J.S.A. 59:10A-2; *Prado v. State*, 186 N.J. 413, 428 (2006)).

Second, even if Plaintiff could establish standing, N.J.S.A. 59:10A-2 does not "prohibit" the NJOAG from representing a state employee *accused* of misconduct. Indeed, the TCA states that "the Attorney General *must* provide a defense for a state employee who requests representation, unless the Attorney General determines that it is more probable than not that: (1)

14

the employee acted outside the scope of his employment; (2) the employee engaged in actual fraud or willful misconduct, or acted with actual malice; or (3) the defense of the employee would create a conflict of interest with the State." *Prado*, 186 N.J. at 428 (citing N.J.S.A. 59:10A-2).

Here, Ms. Wehling is merely accused of misconduct, and the NJOAG exercised its discretion to represent her. Contrary to Plaintiff's assertion, the state court's previous finding that Plaintiff sufficiently alleged a malicious prosecution claim does not equate to a finding that Ms. Wehling did, in fact, commit this tort. And nothing in the present record reflects that the NJOAG found that any of the grounds for refusing a defense to Ms. Wehling were applicable here. *See, e.g.*, Pl.'s Supp., Ex. B (Representation Ltr.).

For these reasons, Plaintiff's arguments in support of disqualifying the NJOAG fail. Accordingly, Plaintiff's Motion to Disqualify Counsel is denied.

## B.      Plaintiff's Motion to Strike

On November 13, 2025, Plaintiff filed a motion to "strik[e] all filings submitted by Deputy Attorney General Azeem Chaudry and the New Jersey Office of the Attorney General . . . prior to November 7, 2025, on the ground that no lawful authorization existed for State-funded representation of Defendant Wehling until that date, as confirmed by newly produced evidence." Def.'s Mot. to Strike at 1.[13] According to Plaintiff, the "newly produced evidence" consists of a representation letter between the NJOAG and Defendant Wehling, dated November 7, 2025, and certain purported internal billing records.[14] *Id.* at 1-2.

Courts have inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v.*

---

[13]    Because this motion is not paginated, the Court refers to the automatically generated ECF pagination for all pin cites.

[14]    Plaintiff also repeats many of the same arguments made in his Disqualification Motion. *See id.* at 3. The Court rejects these arguments here on the same basis.

15

*Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  In the Third Circuit, "case law provides that a court may strike improper filings from its docket pursuant to its inherent authority to control its docket." *Willett v. Dahlberg*, No. 24-24, 2025 WL 1568802, at *4 (D.V.I. June 3, 2025) (quoting *Vitot Equip. Corp. v. Underwater Mechanix Servs., LLC*, No. 23-00009, 2024 WL 231450, at *3 (D.V.I. Jan. 22, 2024); *see also Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) ("A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases."); *see also Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2015 WL 3966434, at *3 (W.D. Pa. June 8, 2015) (holding that in a court's exercise of its inherent authority to control its docket, it may strike from the record an improperly filed document) (citing cases).

Here, the Court rejects Plaintiff's argument that the date of the NJOAG's representation letter (*i.e.*, November 7, 2025) and associated billing records render the NJOAG's previous filings in this matter improper.  Plaintiff has offered no authority for his position that the date of a representation letter is the only point at which the NJOAG may appear in an action on behalf of a state employee, and the Court has found none.  Accordingly, Plaintiff's Motion to Strike is denied.

## C.    <u>Defendant's Cross-Motion to Vacate Clerk's Entry of Default</u>

On July 1, 2025, Defendant cross-moved against Plaintiff's motion for default judgment to vacate clerk's entry of default.  Def.'s Mot.  Defendant argues that the Clerk's entry of default should be set aside because Plaintiff would not suffer any prejudice, Defendant has meritorious defenses to Plaintiff's claims, and default was not the result of Defendant's culpable conduct.  *See id.* at 24-26.

16

Federal Rule of Civil Procedure 55(a) governs default in civil cases. That Rule provides in pertinent part:

> [W]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). Once the clerk has entered a default, the aggrieved defendant must seek leave of court to lift it under Federal Rule of Civil Procedure 55(c). Under that Rule, a court may "set aside an entry of default for good cause[.]" *Id.* Although a decision to set aside the entry of default "is left primarily to the discretion of the district court," the Third Circuit has stressed that it "does not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, "doubtful cases [must] be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Id.* at 194-95 (quotations and citations omitted); *see also Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 137 (3d Cir. 2017) (noting that "entry of default is an 'extreme sanction'" that is "generally disfavored").

Courts consider three factors when determining if a defendant in default has demonstrated good cause:

> (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct. [15]

*$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citations omitted); s*ee also, e.g.*, *Prime Hookah*,

---

[15]  Several courts have considered a fourth factor—the availability of alternative sanctions—in the Rule 55(c) analysis. *See, e.g.*, *Paris v. Pennsauken Sch. Dist.*, No. 12-7355, 2013 WL 4047638, at *2 (D.N.J. Aug. 9, 2013); *Nat'l Specialty Ins. Co. v. Papa*, No. 11-2798, 2012 WL 868944, at *2 (D.N.J. Mar. 14, 2012); *see also Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987). However, "the balance of authority adopts the three-factor approach." *Lewis v. Tribeca Lending*, No. 08-1144, 2009 WL 3353153, *2 n.16 (E.D. Pa. Oct. 16, 2009) (collecting cases). Here, the Court will conform to the weight of authority and conduct a three-factor analysis.

*Inc. v. MK Distribs., Inc.*, No. 19-7283, 2019 WL 13339086, at *1-2 (D.N.J. July 15, 2019) (citation omitted) (enumerating and applying the foregoing factors); *Fidelity Warranty Servs., Inc. v. Edison Motor Cars, Inc.*, No. 16-5728, 2022 WL 356934, at *1-2 (D.N.J. Feb. 7, 2022) (citations omitted) (same). In deciding the motion, the Court accepts all factual allegations made in the motion to vacate the clerk's entry of default as true. *See Panda Ams., Inc. v. Future Fund Invs. Corp.*, No. 25-2641, 2025 WL 2828346, at *3 (D.N.J. Oct. 6, 2025) (citing *1199 SEIU United Healthcare Workers E. v. Amboy Care Ctr., Inc.*, No. 15-309, 2015 WL 3649031, at *2 (D.N.J. June 11, 2015)).

A.    **Prejudice**

"[P]rejudice accrues due to the loss of evidence, increased potential for fraud or collusion, or a substantial reliance on the judgment." *HEI Invs., LLC v. Black Diamond Capital Appreciation Fund, LP*, No. 15-746, 2016 WL 952338, at *3 (D.N.J. Mar. 14, 2016) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). Delay, without more, "rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Emcasco*, 834 F.2d at 74 (alteration in original) (quoting *Feliciano*, 691 F.2d at 656-57); *see also Sunoco, Inc. (R&M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) ("'Delays in [p]laintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the [c]ourt should consider in deciding whether to set aside an entry of default.'" (quotation omitted)).

Here, Defendant asserts that Plaintiff will not suffer any prejudice "because he has already litigated his civil rights claims . . . in both State court and this Court based upon the same allegations." Def.'s Mot. at 25. In opposition, Plaintiff argues he would suffer "irreparable prejudice" if Defendant's motion is granted, because any vacatur of the clerk's entry of default

18

would result in "further delay in expungement and public record correction," "[c]ontinued false association with an indictment," "[r]eputational harm, lost opportunity, and litigation cost burdens," and "[c]ontinued denial of relief from a returned Moorish ID already order[ed] by court." Pl.'s Opp. at 14-15.

Here, however, "'[d]elays in [p]laintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the [c]ourt should consider in deciding whether to set aside an entry of default.'" *Sunoco, Inc. (R&M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) (quotation omitted). Accordingly, the Court finds that this factor weighs in favor of vacating default.

**B.      Meritorious Defense**

A meritorious defense constitutes a complete bar to the action at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *see also HEI Invs.*, 2016 WL 952338, at *3. The defendant must assert facts supporting the existence of a meritorious defense rather than simply denying the allegations of the complaint. *NuMed Rehab., Inc. v. TNS Nursing Homes of Pa., Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999). Ultimately, however, the court "need not decide the legal issue"; rather, it may simply make a finding that the "proffered defense is not 'facially unmeritorious.'" *Emcasco*, 834 F.2d at 73-74 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)). "In cases seeking to vacate only the entry of default, as opposed to the default judgment, 'courts in this circuit seem unwilling to deny the motion to set aside entry of default solely on the basis that no meritorious defense exists.'" *DirecTV, LLC v. Alvarez*, No. 15-6827, 2017 WL 4284526, at *3 (D.N.J. Sept. 27, 2017) (quoting *Mike Rosen & Assocs., P.C. v. Omega Builders*, *Ltd.*, 940 F. Supp. 115, 121 (E.D. Pa. 1996)).

19

Defendant submits that the doctrines of res judicata, collateral estoppel, and the entire controversy doctrine constitute meritorious defenses based on the adjudications in Plaintiff's prior State and Federal Actions. Def.'s Mot. at 25. Plaintiff opposes, asserting that Defendant "misapplie[s]" all three doctrines, because "Plaintiff was the prevailing party in the municipal and criminal proceedings," Plaintiff's claims "were never adjudicated on the merits," and "[o]ngoing injury and fraud nullify preclusion." Pl.'s Opp. at 15.

While Plaintiff may challenge the merits of these defenses, the Court finds that Defendant has satisfied her burden of showing that her "proffered defense is not 'facially unmeritorious'" at this stage of the litigation. *Emcasco*, 834 F.2d at 73-74 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)). Defendant asserts that Plaintiff seeks to relitigate the same causes of action and issues that were previously adjudicated in other cases. Defendant then provides ample factual support for this argument, which is sufficient to satisfy its relatively low burden of showing a non-facially unmeritorious defense. Accordingly, because the Court finds that Defendant has presented a meritorious defense, this factor weighs in favor of vacating the Clerk's entry of default.

## C.    **Culpable Conduct**

The final factor examines "whether the default was the result of the defendant's culpable conduct." *Id.* (citations omitted). "Culpable conduct surpasses mere negligence and consists of willful, intentional, reckless or bad faith behavior." *Malibu Media, LLC v. Waller*, No. 15-3002, 2016 WL 184422, at *4 (D.N.J. Jan. 15, 2016) (quotations omitted). "Although reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard, a mere failure to respond to a claim despite having notice is generally not culpable conduct." *Id.* (cleaned up) (citing *Wingate Inns Int'l v. P.G.S., LLC*, No. 09-6198, 2011 WL

20

256327, at *4 (D.N.J. Jan. 26, 2011) (finding no culpable conduct where failure to respond "was the result of miscommunication and ignorance, not bad faith or strategy")).  The court must also consider the extent to which the error is attributable exclusively to the defendant's counsel. *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308 (E.D. Pa. 1995).

Defendant submits that the failure to respond to the complaint was due to "an administrative oversight and miscommunication" whereby the deadline to respond was incorrectly calendared.  Def.'s Mot. at 26; ECF No. 17-2, Certification of DAG Azeem M. Chaudry ¶ 4.  The Court accepts Defendant's representations and finds no support for Plaintiff's bald allegation of bad faith.  Therefore, the Court finds this third factor weighs in favor of granting vacatur of the Clerk's entry of default.

Because a balance of the relevant factors weigh in favor of vacating the Clerk's Entry of Default, Defendant's Cross-Motion is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Disqualify Counsel, ECF No. 18, is **DENIED**; Plaintiff's Motion to Strike, ECF No. 40, is **DENIED**; and Defendant's Cross-Motion to Vacate the Clerk's Entry of Default, ECF No. 17, is **GRANTED**.  An appropriate order follows.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Edward S. Kiel, U.S.D.J.

21